# Jackson *et al.* v. Millspaugh *et al.*

### *Action of Assumpsit.*

1. *Action to recover amount paid for insurance policy; when not maintainable.*—A bill of sale, dated March 7, 1891, which "bargained, sold and delivered" to the purchasers all the furniture, fixtures, rights, contracts, stores, property and effects owned jointly by the sellers, and used in and belonging to a hotel kept by them, stipulated that the sellers should be liable to pay all the debts, liabilities and expenses chargeable against the said hotel business, prior to March 1, 1891, and should retain all the income therefrom up to said date. At the time of this sale, the sellers had in force, to expire February 12, 1892, several fire insurance policies, covering the property sold. Each of these policies contained a clause requiring any transfer of the policy to be in writing endorsed thereon, and forbidding its transfer by the assured without the consent of the insurer endorsed thereon, and avoiding the policy if the transfer was made without such consent so endorsed. The insurers never gave consent to the transfer of these policies by the assured to any one, but cancelled them as of March 1, 1891. After the execution of the bill of sale, the purchasers demanded of the sellers a transfer of said policies to them by endorsement thereon, claiming that the policies were included in the sale. This they refused to do, and also refused to obtain the consent of the insurance company to such a transfer. Thereupon the purchasers took out new insurance covering the unexpired term of the other policies, and brought an action against the

[Jackson *et al.* v. Millspaugh *et al.*]

sellers to recover the amount paid by them as premiums for such insurance. *Held:* That such action was not maintainable, since, if the policies passed under the bill of sale, they thereby became void, no written assignment by endorsement having been made thereon, nor a written consent by the insurance companies endorsed thereon.

2. *Same; said bill of sale an executed contract.*—Such a bill of sale was a completely executed contract, so far as it manifested a purpose to vest in the purchasers rights of property; and in respect to the fire insurance policies, it contained no executory agreement on the part of the sellers to sell and transfer the said policies with an obligation on the part of the sellers to procure the consent of the insurance companies and their transfer to be endorsed on the policies, and in pursuance of such consent, for the sellers themselves to endorse the transfers thereon.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

The appellees brought the present suit in the circuit court of Jefferson county, against the appellants, to recover the value of certain insurance policies, which plaintiffs claim had been sold to them by the defendants, and which they refused to deliver, and also to recover a certain sum claimed to be owing to the plaintiffs by the defendants for money had and received. The claim of the plaintiffs for money had and received was not contested in the court below, the contention was only in reference to the liability of the defendants for the premiums paid by the plaintiffs on the policies of insurance. The facts in reference to this contention are stated at length in the opinion.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment for the value of the policies for $412.50, the amount of the premiums paid by plaintiffs, and also for the uncontested claim for money had and received. There were exceptions reserved to the rulings of the court upon the evidence, which it is unnecessary to set out in detail. The defendants bring this appeal, and assign as error the rulings of the court upon the evidence, and the rendering of judgment for the plaintiffs.

HEWITT, WALKER & PORTER, for appellants, cited *Lazarus v. Com. Fire Ins. Co.*, 19 Pick. 81; 2 Wood on Fire Ins., 759, § 363; *M. & B. R. R. Co. v. Worthington*, 95

Ala. 598; *Morris v. French*, 106 Mass. 326; *Howard v. Fessenden*, 14 Allen, 124.

ARNOLD & EVANS, *contra*, cited *Pollard v. Ins. Co.*, 63 Miss. 258; 2 May on Insurance, § 384; 2 Wood on Fire Ins. Cos., §§ 361, 371; *Dube v. Ins. Co.*, 64 N. H. 527.

HEAD, J.—On the 7th day of March, 1891, J. F. B. Jackson and W. D. McCurdy executed to W. H. Millspaugh, George H. Clower and R. D. Burnett a bill of sale by which, for value, they "bargained, sold and delivered" to them all the furniture, fixtures, rights, contracts, stores, property and effects owned jointly by the sellers, and then connected with, or used in, the Florence Hotel, and belonging to their Florence Hotel property; which hotel was then being kept by the sellers, in the city of Birmingham, Ala. The title to the property sold was expressly warranted. It was stipulated that sellers should be liable to pay all the debts, liabilities and expenses chargeable to or against said hotel business, prior to March 1, 1891, and that they should be entitled to retain, have and receive all the rents, incomes, choses in action, bills receivable and receipts earned by, and belonging to said hotel business, prior to the said March 1, 1891. At the time of this sale, the sellers had in force, to expire February 12, 1892, six policies of fire insurance, in different companies, covering the goods sold. These policies, when written, were deposited in the hotel safe, and were kept therein when the safe went into possession of the purchasers, under the bill of sale. Each of them contained a clause requiring any transfer of the policy to be in writing, endorsed on the same, and forbidding its transfer by the assured, without the consent of the insurer endorsed thereon in writing; and avoiding the policy if a transfer was made without such consent so endorsed. The insurers never gave consent to the transfer of these policies, by the assured, to any one. On the contrary, after, but as of, the first of March, 1891, they cancelled them. After the purchasers, under the bill of sale, got possession of the policies, they called upon Jackson and McCurdy, the sellers, and demanded that they transfer the same to them by endorsement thereon. They refused to do so, or to obtain the consent of the several insurance

companies to such a transfer, claiming that the policies were not included in the sale. Thereupon, Millspaugh and others took out new insurance, at a cost of $412.50, covering the unexpired term of the other policies, and brought this action against Jackson and McCurdy to recover that sum. The gravamen of the complaint is, that, by the terms of the bill of sale, the policies "*became the property of plaintiffs*;" that to effectuate the transfer of said policies it was, according to their terms, necessary that they should be transferred to plaintiffs by writing, endorsed upon them. It is also alleged that the policies were taken out prior to March 1, 1891, and the premiums had become payable prior thereto, but the same had not been paid, and that said premiums were debts and liabilities chargeable to and against the said hotel business under the terms of the bill of sale; whereby it became and was defendant's duty, in accordance with the terms of the contract and purchase, to pay said premiums and transfer said policies to plaintiffs, in writing thereon, which they failed and refused to do, on request, compelling plaintiffs to take out other insurance, as above stated, to their damage in the said sum paid for the new insurance. The defendants demurred on the ground of repugnancy, objecting that the complaint does not show a cause of action with necessary precision. These demurrers were overruled, and that ruling is assigned as error. The same questions were raised by exception reserved to the finding and judgment of the court, with the addition that, in that finding, the clauses avoiding the policies, if assigned without the consent of the companies endorsed thereon, are brought to the view of the court—the complaint omitting all notice of those clauses. After the execution of the bill of sale, Jackson and McCurdy paid the premiums on the policies up to March 1, 1891, and all the policies were then cancelled by the respective companies.

Upon due consideration, we are unable to see how this action can possibly be maintained. The very foundation principle, upon which plaintiffs seek to base the action, it seems to us, necessarily defeats it—which is, that, by the terms of the deed, the policies were transferred to, and became the property of the plaintiffs ; which act, of itself, *eo instanti*, rendered the policies absolutely null and void, by reasons of the express conditions there-

in, that such a transfer should have that effect. Certainly, the plaintiffs never acquired any right whatever, and the defendants owed them no duty, in respect of the policies, until and unless, by the terms of the deed, such right or duty arose; and the terms of the deed conferred and created no such right or duty, because their very effort so to do, in and of itself, in view of the conditions mentioned, accomplished the total destruction of the policies. This is the logic of the bottom proposition upon which plaintiffs attempt to rest their case. If the deed was so comprehensive, as plaintiffs allege and contend, as to include in its transfer these policies; and if the legal effect of its terms, upon their face, were such, as plaintiffs allege and contend, that the ownership of the policies was transferred to them, it can not be denied that the execution of the deed, so far as it concerned the policies, was within the inhibition of the clauses against assignment. That inhibition is against any assignment, howsoever attempted to be accomplished, legal or equitable, absolute or conditional, without the required consent. We say, then, that the deed, if sufficient to embrace the policies, and their assignment had not been forbidden, was an absolute transfer to the plaintiffs of the policies, and that the same, when brought to the touch of the stipulations against assignment, rendered the policies null and void. The position then of the plaintiffs, insisting upon a recovery here, must necessarily be, that, although the act out of which alone they profess to have acquired all their rights, had the effect to destroy the policies, yet they were injured, because, thereafter, the defendants did not go through the form of transferring to them, by endorsement, the sheets of paper which at one time were policies of insurance, but then utterly defunct. It needs no argument to show that a right of action can not arise out of such conditions.

We might rest this opinion here, but we go further and remark that plaintiffs otherwise misapprehend the import of the bill of sale. They fall into the error of treating it, in respect of the policies, as an *executory* agreement to sell and transfer them; and so treating it, argue that the agreement implied an obligation on defendant's part to procure, at all events, the consent of the companies to their transfer, to be endorsed on the policies, and in pursuance of such consent, to, themselves,

endorse the transfers thereon, inasmuch as such consent and endorsements were essential to the valid transfer of the policies to, and the beneficial enjoyment thereof by, the plaintiffs. But, there is no such executory agreement. Aside from the covenants of warranty of title, and to pay the debts, liabilities and expenses chargeable to or against the hotel business prior to March 1st, 1891, there is nothing executory in it. In so far as the deed manifests a purpose to vest in the purchasers rights of property, it is completely executed in its nature. It manifests and executes the whole agreement, leaving nothing to be done in the future. The parties had the right to make the contract as they chose. The consideration received is presumed to have been fixed with reference to what was granted. If the agreement was so made and executed that the purchasers took nothing of benefit in the policies, they have suffered no loss, because they got what they contracted and paid for. Presumably, if the sellers had bound themselves to obtain the consent of the insurance companies endorsed on the policies, and to have endorsed transfers thereon, a further consideration would have been exacted. At any rate, the deed shows that it was a completely executed contract, leaving nothing for the sellers to do but to answer in damages, by virtue of the warranty of title, for any want of title which might develop, to the injury of the purchasers; and by virtue of the covenant to that effect to hold the purchasers harmless against any debts, liabilities and expenses "chargeable to or against said hotel business prior to the first day of March, 1891." It is not the theory of this action that the damages sought to be recovered resulted from a breach of either of these covenants. It is true, the complaint alleges that the premiums were not paid and that the last mentioned covenant was thereby broken; but if that allegation be not founded in a misconception of the meaning of the covenant, it becomes wholly immaterial, and is not relied on, in the light of the evidence which shows that the premiums were paid and the policies cancelled by the companies, which they had a right to do, of their mere option, before the plaintiffs expended the money in the purchase of the new insurance. The action proceeds upon a different theory altogether. It assumes the existence of a covenant on the part of the defendants

[Steiner Brothers v. Clisby.]

that they would go beyond what their deed had effected, and make a new contract with insurance companies, at whatever cost might be necessary, and obtain from them a new agreement authorizing the transfer of the policies to the plaintiffs; or, being unable, or failing to procure such consent, to answer in damages to the plaintiffs therefor; and not only this, but a covenant that the insurance companies would not exercise their option, at any time, to cancel the policies; and not only this, but a covenant for further assurance, so to speak, that the defendants would execute a further transfer, by endorsement on the policies; and that there were breaches of all these covenants. When we go to the deed to look for these supposed covenants, we find nothing but a plain, absolute, fully executed conveyance.

There are other counts in the complaint, upon different causes of action, under which it is not denied plaintiffs were entitled to recover $457.40 with interest thereon from March 7th, 1891. The judgment of the circuit court will be reversed and a judgment here rendered in favor of the appellees against the appellants for that sum and interest. Let the appellees pay the costs of appeal.

Reversed and rendered.