HOME FIRE INSURANCE COMPANY V. ELIZABETH KUHLMAN.

FILED APRIL 19, 1899.   NO. 8863.

1. Insurance: UNOCCUPIED PREMISES: FORFEITURE. A policy of fire insurance providing that it shall be null "if the building be or become vacant or unoccupied and so remain for ten days," does not, upon a violation of such condition, become absolutely void unless the insurer chooses to take advantage of the forfeiture.

2. ———: WAIVER OF FORFEITURE. An insurance company, upon being informed that there has been a breach of a condition in its policy providing for a forfeiture, may decline to take advantage of such forfeiture, and in that event the contract would remain in force.

3. ———: ———. A waiver, to be effective in defeating a forfeiture, need not rest on either a new agreement or an estoppel; and when once made it is irrevocable.

4. ———: ———: POWER OF AGENT. An agent of a corporation, acting within the scope of his authority, may, by his declaration or conduct, waive his principal's right to take advantage of a forfeiture.

5. ———: ———. An inference of waiver may be drawn from any declaration or conduct of the insurer which fairly indicates that it has, with full knowledge of the facts, freely chosen to treat the policy, and deal with it, as a valid and subsisting contract.

6. ———: FORFEITURE. When an insurer has taken advantage of a

forfeiture and has elected to treat the policy as void, the contract is at an end and cannot be revived, except by mutual consent of the contracting parties.

7. ———: ———: UNEARNED PREMIUM. When an insurer has elected to treat a policy of insurance as void for breach of condition providing for a forfeiture, the assured has no claim upon the company for any unearned premium.

8. Trial: REJECTION OF EVIDENCE: REVIEW. It is not error to reject proffered evidence which has no material bearing upon the facts in dispute.

9. Evidence: REVIEW. A judgment based upon a verdict which is supported by sufficient competent evidence will not be disturbed on the ground that the apparent preponderance of the evidence is on the side of the losing party.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.   *Affirmed.*

*Greene & Breckenridge,* for plaintiff in error.

*Lee S. Estelle, contra.*

SULLIVAN, J.

In the district court for Douglas county Elizabeth Kuhlman recovered a judgment against the Home Fire Insurance Company in an action on a policy of fire insurance covering a two-story frame building located in the city of Omaha. The policy provided that it should be null "if the building be or become vacant or unoccupied and so remain for ten days." The building did become vacant and so remained for more than thirty days before April 11, 1893, the date of the fire by which it was damaged. The company insists that the judgment against it should be reversed because the policy had been forfeited and was not in force when the fire occurred. While conceding that there had been a breach of the condition against non-occupancy, counsel for plaintiff contends that the right to declare a forfeiture had not been exercised, but had been voluntarily relinquished by the defendant acting through Mr. Charles J. Barber, its sec-

retary and general manager. This defense was properly pleaded and the evidence justified its submission to the jury. Under our decisions the fact of vacancy did not *per se* annul the contract, but merely gave to the company the right to treat it as void. (*Hughes v. Insurance Co. of North America*, 40 Neb. 626; *Eagle Fire Co. v. Globe Loan & Trust Co.*, 44 Neb. 380; *Slobodisky v. Phenix Ins. Co.*, 52 Neb. 395.) The defendant, on being informed that the insured property had been vacant for more than ten days, might decline to take advantage of the forfeiture, and in that event the policy would remain in force. The election to waive being once made it would be irrevocable. It could not be recalled. (*Illinois Live Stock Ins. Co. v. Baker*, 153 Ill. 240.) The contention that a waiver must have the elements of an estoppel in cases of this kind cannot be sustained. "It is," says Sutherland, J., in *People v. Manhattan Co.*, 9 Wend. [N. Y.] 381, "a technical doctrine introduced and applied by courts for the purpose of defeating forfeitures." In *Titus v. Glens Falls Ins. Co.*, 81 N. Y. 410, it was held that an effective waiver need not be based on either a new agreement or an estoppel. Substantially the same holding was made in *Hollis v. State Ins. Co.*, 65 Ia. 454; and such is now the settled doctrine of this court. (*Billings v. German Ins. Co.*, 34 Neb. 502; *Eagle Fire Co. v. Globe Loan & Trust Co.*, *supra*.) The material inquiry then upon this branch of the case is whether the defendant elected to exercise or to waive its right to take advantage of the forfeiture. The intention of the agent was, of course, the intention of the corporate principal. The decision of Mr. Barber was the decision of the company. Did he, upon being advised of the broken condition, determine to treat the policy as being without force or vitality from the time of the breach, or did he purposely forego this privilege? The fire occurred on April 11, and on or before April 13 the company was informed of the fact and caused an estimate of the loss to be made. To the plaintiff, who resided in San Francisco, the following letter was sent on the day of its date:

"OMAHA, April 13, 1893.

"*Mrs. Elizabeth Kuhlman, No. 873 Mission Street, San Francisco, Cal.*—DEAR MADAM: We herewith inclose bank draft for $3.90, being in full of return premium under policy No. 65008, issued by the Home Fire Insurance Company to you on May 23d last for $1,000, on building located at No. 920 Douglas street, Omaha, Nebraska, said policy being this day canceled on our books, and our liability terminated thereunder from and after this date. We have this day tendered Mr. W. E. Rhodes, your agent at the U. S. National Bank, this city, $3.90 cash, in cancellation of said policy. Our object in canceling this policy is that it has just come to our notice that the city authorities some time since condemned and ordered said building to be torn down. We also are just in receipt of information that the building has been vacant for some time. Please sign and return the inclosed receipt, and oblige,

"Yours truly, CHAS. J. BARBER, *Sec'y.*"

This letter was certainly competent evidence of a waiver, and the trial court did not err in so informing the jury. It shows action on the part of the company altogether inconsistent with an election to treat the policy as having been previously invalidated. It was written for the express purpose of terminating the contract and on the assumption that the contract was then in full force and effect. It indicates that the company was then seeking to put an end to a valid and subsisting contract of insurance, not because of any act or omission of the owner of the insured property, but because of some action taken by the city authorities concerning it. Undoubtedly the jury might find that the defendant had forborne to claim a forfeiture from the fact that on April 13 it considered the policy in force and was taking affirmative action to destroy its vitality. Other letters written by Mr. Barber to the plaintiff give strong support to the hypothesis of a waiver. He said in a letter written May 22 that the policy would be canceled from the date that

plaintiff received the draft for $3.90. He also assured her that she could not avoid a cancellation of the policy, and that it had been canceled and was void from the time she signed the receipt for registered letter containing the draft. "The cancellation," he continued, "does not date beyond the receipt by you of our registered letter containing ·the remittance, but simply terminates any liability accruing from and after that date." "The $3.90," he added "belongs to you and is the unearned premium on the said mentioned policy, which is canceled and void as to any accruing liability thereunder" after the letter of April 13 was received. On July 31 Mr. Barber again wrote to the plaintiff urging her to accept the $3.90 unearned premium, saying that it belonged to her and that the policy was not in force after the receipt by her of the company's draft in April. From the statements contained in these letters it is clear that the defendant considered the policy in force until the draft for $3.90 reached the plaintiff at San Francisco. There is also, perhaps, in the evidence ground for an inference that the premium was considered as earned, and that it was retained, up to the 17th of April. In *Eagle Fire Co. v. Globe Loan & Trust Co.*, *supra*, the insurer, with knowledge of the loss, canceled its policy, the cancellation taking effect from and after the date of the loss, and it repaid to the assured the unearned premium for carrying the risk from and after the date of the loss until the expiration of the policy according to· its terms. This circumstance, it is said in the opinion, "was evidence which tended very strongly to show that the insurance company at that time recognized the policy as being in force up to and including the day that the loss sued for occurred." The loss occurred November 9, and on November 24 the insurer repaid the unearned· premium from November 10. Concerning this it was said that the assured "having violated the policy by procuring additional insurance thereon without the knowledge and consent of the insurer, it was entitled, on discovering such

violation, to cancel the policy by reason thereof, such cancellation to take effect from and after the date of its violation." So in this case, the defendant had a right, on being informed that a condition of the policy had been broken, to treat the policy as of no effect from the date of the breach. If there was a forfeiture of which the defendant had taken advantage, then there was no contract to cancel, for it had already ceased to exist. It was ·dead and could not be reanimated except by mutual consent of the contracting parties. (*Moore v. Phœnix Ins. Co.*, 62 N. H. 240; *New v. German Ins. Co.*, 31 N. E. Rep. [Ind.] 475; *Boyd v. Insurance Co.*, 90 Tenn. 212; *Baldwin v. German Ins. Co.*, 105 Ia. 379, 75 N. W. Rep. 326; *Ferree v. Oxford Fire & Life Ins., Annuity & Trust Co.*, 67 Pa. St. 373; Ostrander, Fire Insurance [2d ed.] sec. 342.) And if the company had taken advantage of the forfeiture, there was no unearned premium which the plaintiff was entitled to receive. (*Farmers Mutual Ins. Co. v. Home Fire Ins. Co.*, 54 Neb. 740, 74 N. W. Rep. 1101; *Collins v. St. Paul Fire & Marine Ins. Co.*, 44 Minn. 440, 46 N. W. Rep. 906; *Baldwin v. German Ins. Co.*, 105 Ia. 379, 75 N. W. Rep. 326; *Jackson v. Millspaugh*, 103 Ala. 175; *Phœnix Ins. Co. v. Stevenson*, 78 Ky. 150; *Johnson v. American Ins. Co.*, 41 Minn. 396; *Colby v. Cedar Rapids Ins. Co.*, 66 Ia. 577.) If the defendant had not waived its right to claim a forfeiture, it is, as was said in the *Eagle Fire Ins. Co. Case*, difficult to understand its insistence that there was an unearned premium which rightfully belonged to Mrs. Kuhlman. It is equally incomprehensible why the company should so persistently seek to rescind the contract if, by reason of the forfeiture, it was already lifeless and incapable of rescission. We are entirely satisfied that the question of waiver was submitted to the jury upon proper instructions, and that the finding thereon is supported by sufficient evidence.

The refusal of the court to permit Mr. Gilbert, a witness called on behalf of the defendant, to testify to the filthy condition of the floors of the insured building is as-

signed for error. We think the evidence sought to be elicited could have no very material bearing on the question of damage, and it was not relevant to any other issue. Besides, there having been no formal offer to prove any specific fact, the alleged error is not available.

The court refused to receive testimony on behalf of the company tending to show the cost of putting the building in good condition immediately before the fire. In this there was no error. The plaintiff's claim was not based on an injury suffered by the building in good condition. The question in controversy was the damage caused by the fire—the expense of restoring the building to its former condition. What it would cost to renovate and modernize the whole structure before it was damaged was not an issue in the case, and therefore the evidence tendered was properly refused.

It is finally insisted that there should be a reversal of the judgment because the damages are excessive. The recovery seems quite large, but it is well within the estimates of competent witnesses, and we see no sufficient reason for substituting our judgment of the evidence for that of the jury. The judgment is

AFFIRMED.