ANNA SCHMIDT, APPELLEE, v. WILLIAMSBURGH CITY FIRE
INSURANCE COMPANY, APPELLANT.

FILED MARCH 13, 1915.   No. 18783.

1. **Insurance: FIRE POLICY: VACANCY CLAUSE: BREACH.** After a par-
tial loss under a fire policy which renders the building untenant-
able, the insured is not guilty of a breach of the vacancy clause
of the contract where he permits the property to remain unoccu-
pied with the knowledge of the insurer.

2. ———: ———: CONSTRUCTION. It is not within the contemplation
of the parties that an insured building shall be occupied by a ten-
ant or otherwise when, as a result of its partial destruction by
fire, it becomes unfit for occupancy.

3. ———: ———: AMOUNT RECOVERABLE. Where insured property is
totally destroyed as the result of three fires, the measure of recov-
ery for the final loss is the amount written in the contract, where
the insured has complied in good faith with the terms of the policy.

4. ———: ———: NOTICE: SUFFICIENCY OF EVIDENCE. The evidence
examined and *held* to sustain the verdict of the jury.

APPEAL from the district court for Douglas county:
JAMES P. ENGLISH, JUDGE. *Affirmed.*

*Greene, Breckenridge, Gurley & Woodrough,* for appel-
lant.

*A. S. Ritchie* and *Charles L. Fritscher, contra.*

HAMER, J.

This case comes from Douglas county on a second ap-
peal. The former opinion is reported in 95 Neb. 43.

Anna Schmidt owned a building in South Omaha, which
was occupied as a rooming house by colored people. It was
insured in the defendant company "to an amount not ex-
ceeding eight hundred and no-hundredths dollars." At-
tached to the insurance policy is a clause which says:
"Loss or damage, if any, under this policy, shall be pay-
able to Lion Bond & Surety Company, as mortgagee (or
trustee), as interest may appear, and this insurance, as

to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same, "provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void."

The policy contains a proviso that, if the building insured shall become vacant or unoccupied and shall so remain for ten days, then the entire policy shall be void. The provision reads: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The policy also provides that no person shall be deemed the agent of the company in any matter relating to the insurance, unless duly authorized in writing. About March 20, 1910, there was a fire in the insured building which burned a hole around the roof. The tenant moved out. There was a second fire on March 30, 1910, and a third fire April 17, 1910. This last fire seems to have completely destroyed the building, except slight remains of the foundation. The building was vacant and unoccupied from March 20, the time of the first fire, until the last fire, April 17, 1910.

It is claimed that N. P. Dodge & Company preceded Gallagher & Nelson in charge of the insured property.

Gallagher & Nelson were the agents of Anna Schmidt, and had charge of the rental of her houses at the time the building was destroyed.

W. G. Dickey testified that he was associated with N. P. Dodge & Company on the 20th day of March, 1910; that their place of business was the Withnell Block in room 206; that he knew the firm of Gallagher & Nelson, who were in business in the Brandeis Building; that he knew Miss Nelson; that at that time he received word from Miss Nelson in reference to a fire in certain property in South Omaha; that he knew Mrs. Anna Schmidt; that he had been in charge of her property; that he got acquainted with her by being in charge of her property; that Gallagher & Nelson succeeded him in charge of her property; that on the 20th day of March, 1910, Miss Nelson called him up by telephone and told him of the fire which occurred in this property in South Omaha; that it had sustained a loss by fire; that Miss Nelson referred to Mrs. Schmidt's property, and that the witness knew what property it was; that it was the property which N. P. Dodge & Company had had charge of previous to this time; that Miss Nelson had said to the witness that the property had sustained a small loss. She "didn't think it would be very much, and if we would agree to it they would go on and have it repaired."

Dickey testified that he called up Mr. Gibson and told him that Miss Nelson had reported a fire loss on this certain property—Mrs. Schmidt's property; that as he wrote the business, and it was "brokered" through his office, "we wanted him to look after it;" that Gibson said he would look after the matter; that the talk with Gibson was quite soon after he first learned about the fire. The witness testified: "I always look after these things quite promptly, you know."

Miss Nelson testified that Gallagher & Nelson had charge of the business of renting houses for Anna Schmidt; that the property was a two-story rooming house; that she was a member of the firm of Gallagher & Nelson; that the firm had charge of Mrs. Anna Schmidt's business; that she per-

sonally knew the house that was burned; that it was on lot 2, in block 75, South Omaha; that it was a two-story frame building; that about the 20th of March, 1910, it was occupied by a man by the name of Palm; that a fire occurred there, and that she saw the premises shortly after the fire; that it might have been a week afterwards; that "there was a large hole burned in the roof of the building," that it was around the chimney; that on the 21st of March she told Mr. Dickey about it; that she told Mr. Dickey "it was a small loss, a small fire on Mrs. Schmidt's property."

A. N. Gallagher testified that he knew of the fire which occurred on the premises March 20; that he saw the premises on Monday morning, the day after the fire; that there was quite a large hole burned through the roof; that the mortar was all out of the flue, and that mortar and water had dropped down from the top floor, and that the fire had communicated to the top floor, and there was dirt and rubbish around in there; that the premises were then occupied by William Palm; that the premises after this fire of March 20 were not tenantable; that the water from the fire department had dripped down through the ceiling and down the stairway, and that the bedding and beds were all wet, and the plastering, and that the firemen going up there and the people going in had tramped all over the stairs, and plastering and pieces of board and things were all up and down the stairs and floor and very dirty; that the motar was absolutely all out of the flue; that the flue had to be repaired before the house could be used again; that the hole in the roof was seven or eight feet square, and that it was burned up along the flue; that the hole was large enough to admit the rain, if there was any rain, and that anybody occupying the premises would be sure to get wet with that hole in the roof; that Mr. Palm's stove was all covered with water and mortar; that part of it remained and part of it was removed.

Mr. Gallagher testified that Palm had removed all of his effects from the building before the fire of April 17 occurred, or nearly so; that he removed his furniture on the

17th of April; that on the 21st of March it had been snowing; that there was snow on the roof when the witness went down in the morning; that the premises could not be used by a tenant without making a fire; that the night before the last fire, being on the 16th of April, the premises had been repaired; that the repairs were finished. Gallagher talked with Wilken, who said he was an adjuster for the Williamsburgh City Fire Insurance Company, and that he wanted to make an adjustment of the loss of Anna Schmidt; that he had viewed the property and had made a tender of $150—not a tender, but an offer, of $150; that Gallagher told him the offer of $150 was not acceptable; that nothing less than the full amount of the fire would be considered; that Wilken waited around, and the witness told him that it was no use "taking up his time or mine; that if he did not care to meet us on that basis we might as well close it; he picked up his grip and left the office." It was Gallagher who testified that there was nothing left of the house after the third fire, except some bricks in the foundation, worth about $25.

A contractor and builder named Farrell testified that he saw the building about a week or ten days after April 17, 1910; that at that time the woodwork was practically all destroyed, and the foundation was the principal thing remaining; that there was a part of the south side standing, but that it was badly charred, and that the woodwork was worth nothing except for kindling wood.

The chief of the fire department testified that there were people living in the house at the time of the first fire, but that it was vacant on March 30, and also on April 17; that the cause of the first fire was sparks from the chimney; this first fire was telephoned at 10:25 A. M., and the second fire was reported at 5:52 P. M. on March 30; that the fire of April 17 was reported at 1:45 A. M.; that the record of the fire on March 20 showed that there were three companies present and the fire lasted 30 minutes; that the record of the third fire showed that the building was a vacant house.

98Neb.5

Arthur All testified that he was a fireman; that he was present at the first fire; that at that time the house was occupied, but that it was vacant at the second and third fires. On March 30 he noticed a mattress, and he believed that was the cause of the fire; that there might have been two mattresses.

O'Laughlin testified that he attended all three of the fires; that the house was occupied on March 20 by colored people; that there was nobody living there on March 30; that he saw one mattress in the basement, and that there was a fire there; that on April 17 there was nothing in the building that he could see, and that no one was living there, and there was no furniture and no sign of occupancy.

Mr. Gibson testified for the defendant, that his office issued the insurance policy sued on; that notice of the fire of April 17 was given to him in a letter from Gallagher & Nelson; that it is the only notice he ever got; that it makes no mention of any other fires than that of April 17; that he was authorized to solicit insurance and to issue policies and to represent the company in matters affecting the execution and delivery of insurance contracts, although he was not authorized to represent the company with regard to the adjustment of losses.

It seems to have been admitted that after the fire of April 17, 1910, the policy had a year and a month, or thereabouts, to run, and that the unearned premium would have amounted to about $8.

Exhibit 2 contains the proofs of loss. They refer to the fire of April 17. These proofs were sent to the home office, and were referred to Mr. Wilken, the company's adjuster, and he went to South Omaha about May 17 or 18 and saw Gallagher & Nelson, and claimed to them that the policy was void; that the company was not liable, but it was willing to pay something rather than litigate the matter. On the foregoing facts of the case the district court on the first trial gave the jury a peremptory instruction to return a verdict for the plaintiff and against the defendant

in the amount of the policy. It seems to be conceded that the evidence in each trial is along the same line.

It was held by this court at the former hearing (95 Neb. 43), as stated in the syllabus: "Notice and knowledge of the existence of a vacancy in the insured premises, or of the occurrence of a fire in the same, to such an extent as to make them uninhabitable, communicated to the local agent of the defendant, authorized to issue policies and transact the usual business of a recording agency, is the knowledge of the insurance company." The above holding would seem to be important in determining the law applicable. It determines that branch of it at least. The case was reversed, because it was the view of this court, as stated in the body of the opinion, that the case should have been sent to the jury to pass upon the question of fact as to whether notice of the former fire was given to the agent of the defendant. It was also said "that the district court erred in instructing the jury, as a matter of law, that 'the insurance contract    *    *    *    was still in force, and recognized at all times afterward as being in force, between the parties,' and in directing it to return a verdict for the plaintiff."

In *Hunt v. State Ins. Co.*, 66 Neb. 125, this court held on rehearing, as stated in the syllabus: "Where a tenant has removed from the insured premises and a loss occurs the same day, within a few hours, whether there was a vacancy, or a mere temporary cessation of occupancy until the tenant could fully remove his effects and some one else could be put in, is a question for the jury." It was further said in the syllabus: "If, with knowledge of the facts by reason whereof it is entitled to claim a forfeiture, the insurer continues to treat the policy as in force, or does any act inconsistent with an intention to insist upon the forfeiture, the forfeiture is waived." In the body of the opinion it is said: "If the insurer, with knowledge of the facts by reason whereof it is entitled to insist upon forfeiture, continues to recognize the policy as in force, or does any act inconsistent with insistence upon the for-

feiture, the forfeiture is waived, and may not be relied upon thereafter"—citing *Slobodisky v. Phœnix Ins. Co.,* 52 Neb. 395; *Phœnix Ins. Co. v. Holcombe,* 57 Neb. 622; *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488.

In *Lancashire Ins. Co. v. Bush,* 60 Neb. 116, this court held, as stated in the syllabus: "After a partial loss under a fire policy which renders the building untenantable, the insured is not guilty of a breach of the vacancy clause of the contract where he permits the property to remain unoccupied pending the period during which the insurer is authorized to exercise his option to repair the damaged building." In the body of the opinion it is said: "It could not have been contemplated by the parties that the building should be occupied, when, as a result of its partial destruction by fire, it became unfit for occupancy."

And, as we view the matter, the insurance company had notice of the condition of the building after the conversation of Miss Nelson, of Gallagher & Nelson, with Mr. Dickey, who testified that he called up Senator Gibson of South Omaha, the agent of the insurance company and who wrote the policy, and told him about the fire, and Gibson said "he would look after the matter." This was knowledge imparted to the insurance company.

An examination of the instructions appears to call for a review of the alleged error concerning the giving of instruction No. 2 on the court's own motion. In that instruction the court told the jury: "The one question for the jury to decide in this case is whether or not notice of the fire of March 20, 1910, was given to the said L. C. Gibson, at or shortly after the time of said fire of March 20, 1910, occurred, and the burden of proof is upon the plaintiff to show by a preponderance of the evidence that said notice was given to the said Gibson, and, if she (the plaintiff) has so shown, she will be entitled to recover." The foregoing instruction seems appropriate to the evidence given. It is without error.

The verdict of the jury is fully sustained by the evidence. We believe that the instructions given by the court

are properly applicable to the case.   The judgment of the
district court is

AFFIRMED.

MORRISSEY, C. J., LETTON and FAWCETT, JJ., not sitting.