DELLA M. DODDER, APPELLANT, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY, APPELLEE.

FILED DECEMBER 15, 1919. No. 20627.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*A. S. Churchill* and *Byron G. Burbank,* for appellant.

*Gurley & Fitch, contra.*

ALDRICH, J.

It appears of record that the same witnesses appeared in this case as in *Dodder v. Ætna Life Ins. Co., ante,* p. 70. Also the same issues were rendered, and it was stipu- lated that the decision in this case should follow *Dodder v. Ætna Life Ins. Co., supra.* This decision therefore is

AFFIRMED.

SEDGWICK, J., not sitting.

The following opinion on motion for rehearing was filed Feburary 28, 1920. *Rehearing denied.*

1. **Appeal**: AFFIRMANCE. Where the verdict announced by the jury was the only one permissible under the law and evidence, the judgment will be affirmed, and in such case errors occurring at the trial were not prejudicial.

2. **Insurance**: FORFEITURE. There is no forfeiture or denial of liabil- ity when the insurance company treats the policy sued upon as a valid or binding contract.

3. ———: DEFENSE: WAIVER. If the insurance company at all times throughout the negotiations denies liability, and sends blanks to

make proof of loss, subject however to its plenary rights to make whatever defense it may have, then there is no waiver of any defense it may have.

ALDRICH J.

The brief filed for rehearing shows one or two misstatements inadvertently made in the opinion, *ante,* p. 74, which require attention.

We erred in our statement that by stipulation it had been agreed that the decision in the *Ætna* case should be decisive in this case.

We also erred in our statement that the witnesses in the two cases were the same. This would be serious error if in considering the instant case we had failed to give due and proper consideration to the testimony of witnesses who swore in this case and did not testify in the *Ætna* case. In view of the fact, however, that in the consideration of both cases we did give consideration to the evidence of all the witnesses, we do not consider the mistake a serious one. The evidence bearing upon the profits in business in the year 1916 was considered by all the judges. The same is true of the evidence of the hackman, who swore that on the morning of January 4, 1917, he took the Moran woman from the Union Depot in Omaha, at 8:30 a. m., to Twenty-fourth and Vinton streets. The evidence going to the merits of the controversy that we considered final and conclusive was substantially the same in both cases, and we were of the opinion that the evidence shows that the death was suicidal.

It is also insisted that we erred in stating that the issues were the same in the two cases. They are substantially the same. It is true that the plaintiff argues at some length in the instant case that the defendant waived its defense that it was not liable upon the policy because defendant asked for proofs of death and proofs were furnished. The evidence, however, shows clearly that nothing in the nature of a waiver arose. In the request for proofs of loss, plaintiff was notified by an at-

tached reservation that the company did not waive any of its defenses, and the trial court was right in striking out the evidence upon that question. We hold the rule to be that, when a contract of insurance is treated by the company as valid and in full force during all the time of the negotiations, then its defense may be considered as waived; but when it denies liability, then there is no waiver.

It is also evident that from the beginning the insurance company in this case did not intend to recognize liability. The plaintiff very early in the proceedings knew this. It waived no defense it might have, and the parties understood each other perfectly.

It is said: ''Where, by the policy or otherwise, the insured is informed, at the time the demand is made, that a full compliance with the policy will be required, and that the demand shall not be considered as a waiver of any forfeiture, no waiver will arise, though the insured complies with the request.'' 4 Cooley, Briefs on the Law of Insurance, p. 3520. We hold it to be the law that, where under the circumstances a reasonable person may believe that no formal or preliminary requirement of proof of loss will be required, then, if he waives cost and trouble in making proofs, it may be inferred that there is a waiver. But it is also true that a waiver of past failure, when evidenced by supplying blanks to the insured, will not be construed as waiver of future reasonable delay in furnishing the proofs. This substantially is the doctrine laid down in 1 C. J. 480, sec. 202. We hold it to state the law governing the question of waiver presented in the instant case.

It is evident that defendant company knew the facts surrounding this case, and it is also evident that it did not intend to recognize liability. Then, if it happens that the company fully intends to deny liability, it fully shows that proofs of loss are of no benefit to any one. Hence the general doctrine that, if an insurance company knows all about the facts and feels that there is no

liability on its part, there would be no reason to insist
that the insured go to the trouble and expense of making
proof of loss, when it already knew of the loss and what
was claimed to be the cause of it.  The company never
intended to waive, and as a matter of fact it should in
no way be construed that they waived, any defense.  We
hold that the assured under such circumstances should
not be allowed to take advantage of the company, any
more than the company should be allowed to take ad-
vantage of the assured.

In all of the preliminary arrangements between plain-
tiff and defendant, defendant always expressly reserved
its right to whatever defense it might have.  The de-
fendant early took the position that whatever course
plaintiff took she assumed the entire responsibility, and
the defendant never assumed any liability on its policy
by reason of Mr. Dodder's death.  It early assumed the
position that the filing of the proof of loss with the com-
pany, when completed, should not under any circum-
stances be considered as a waiver or impairment to any
defense.  Then it would seem that, if there is anything
in the conduct and the attitude of the defendant towards
the plaintiff, the defendant always expressly reserved
its right to make a defense.

The instant case is different from *Home Fire Ins. Co.
v. Kennedy,* 47 Neb. 138.  In that case there was a stip-
ulation for arbitration; in the instant case there was
always at all times a denial of liability.  In *Home Fire
Ins. Co. v. Kennedy, supra,* after the loss of the property
by fire was known, the company in a sense admitted its
liability, recognized it by repeatedly demanding proofs
of loss and insisting upon arbitration; here knowledge of
the claim that death was caused by suicide and the parties
never negotiated nor offered to compromise.  The
company virtually said: Here are your blank forms for
proof of loss, make whatever showing you wish, ad-
vance whatever claims you have, but remember this de-
fendant stands on its policy, upon the defense that plain-

tiff came to his death by shooting himself. Defendant always denied validity of its policy. Can any one claim a waiver under these circumstances and in face of facts like these? These Nebraska cases cited by plaintiff may set forth the abstract law, but the facts in this case do not apply to the ones of waiver as cited in those cases.

In the case of *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488, the issue was the opposite of what we find in the instant case. In that case there was a plain inference of waiver to be drawn from the conduct of the insurer, with full knowledge of all the facts, to treat that policy as a valid and subsisting contract. In the instant case the only inference that can be drawn is: Your contract is a nullity by reason of suicide, and hence we deny liability. That is a very different situation from the *Kuhlman* case.

It is true, estoppel can only fairly arise when one party to the contract would induce the other to expend money and time in the belief that liability on the contract was not disputed. Thus it is plain that the evidence in this case is very different from that in the cases cited by plaintiff.

Defendant early investigated this case, and the evidence disclosed, as it well knew, that from all the facts in the case there was one certain definite conclusion to be arrived at. Dodder's death came from the rash act of his own hand. There was no room for speculation here. Under the evidence there is no well-grounded suspicion of accidental shooting or of robbery. Circumstances brought out in the record with respect to his financial and domestic relations afford undoubted proof that deceased assured came to his death by his own hand. So certain are we that our position is correct, it may be likened to one demonstrating a proposition in geometry. At the conclusion we can say axiomatically, "Which was to be demonstrated."

Defendant insists, in the matter of deceased assured's alleged shortage, that the evidence detailing this information was wholly incompetent, that no sufficient foun-

dation was made for its introduction in evidence, and that it was hearsay. In the *Ætna* case we held a shortage of $16,000 was shown, and counsel for plaintiff bitterly complained. We have again examined the evidence, as appears of record in the instant case, and it but reaffirms our former conclusion. The expert witness testifying here on this matter thoroughly qualified himself as to his legal right to testify on this question of shortage. The foundation was complete. Defendant's counsel went with painstaking detail into each matter, and deceased assured's own records show the amount turned over to him by his predecessor, the amount received from the grand recorder of the A. O. U. W., and also the disbursements. Disbursements made by deceased assured were introduced in evidence. Then the record discloses what was the full amount received and what was the full amount paid out, and it shows a shortage of $16,000. The expert accountant who testified could determine from the records Dodder kept as treasurer of the A. O. U. W. that there was a $16,000 shortage. The testimony and evidence with reference to the several banks where Dodder kept A. O. U. W. accounts simply amount to a corroboration of what was in Dodder's own books. The evidence of this expert stands uncontradicted in the record.

Appellant's discussions have been keen and analytical, but he has been unable to remove the one impassable barrier, suicide. Like Banquo's ghost, "it will not down," it is ever and anon. Two juries on the same facts of self-destruction have found the same way, and the evidence was so convincing that each jury brought in the only verdict permissible, and as a matter of law this court will not disturb such a verdict unless clearly wrong.

REHEARING DENIED.

LETTON and DAY, JJ., not sitting.