MISSOURI, K. & T. TRUST CO. et al. v. GERMAN NAT. BANK OF DENVER, COLO.

(Circuit Court of Appeals, Eighth Circuit.   November 23, 1896.)

No. 770.

**1. GUARANTY INSURANCE—APPLICATION—REPRESENTATIONS AND WARRANTY.**
An answer to a question, contained in an application for a bond insuring the integrity of the applicant, to which application no reference whatever is made in the bond itself, is to be treated as a representation, rather than as a warranty; and it is not error to permit the jury, in an action on the bond, to determine whether such answer was substantially true or not.

**2. SAME—ACTION ON BOND—PROVINCE OF JURY.**
The M. Co. had executed a bond to the G. Bank insuring the fidelity of one G., an employé of the bank.   G. was afterwards found to be a defaulter, and, soon after this discovery, the M. Co. learned that, in his application to it for the bond, G. had understated his indebtedness to the bank by some $3,700. Without disclaiming liability on the bond, the M. Co., in conjunction with the bank, proceeded to take security from G., and to attach his property.   Afterwards, being sued by the bank on the bond, the M. Co. set up G.'s misstatement, as a defense.   *Held*, that it was not error to submit to the jury the question whether the M. Co., by proceeding, after it knew the facts, to take security from G., etc., without notifying the bank that it disclaimed liability, had waived the defense.

**3. HOTEL REGISTER AS EVIDENCE.**
When a witness has testified that he was not in a certain city at a certain time, and that, when in such city, he usually stopped at a certain hotel, it is not error to exclude the register of such hotel, offered to show that, at the time specified, his name did not appear on it.

**4. SUBSTITUTION OF PARTIES—RECEIVERS.**
It is not error to deny a motion, made by the defendant in an action, to substitute as plaintiff a receiver of the corporation by which the action was brought, appointed since its commencement.

In Error to the Circuit Court of the United States for the District of Colorado.

G. A. Vandeveer (J. McD. Trimble and C. A. Braley with him on the brief), for plaintiffs in error.

John S. Macbeth (A. E. Pattison and Henry W. Hobson with him on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.   This suit was brought by the German National Bank of Denver, Colo., the defendant in error, against the Missouri, Kansas & Texas Trust Company and the National Surety Company, the plaintiffs in error, who are hereafter termed, respectively, the "Trust Company" and the "Surety Company," to compel the defendants below to discharge the liability of the trust company on a certain bond which the trust company had executed on October 4, 1892, in favor of the German National Bank of Denver, hereafter termed the "Bank."   The bond was given to insure the bank, for the period of 12 months, against any loss that it might sustain in con-

sequence of the dishonesty or fraud of any of its employés in the discharge of any duty which such employés might be called upon to perform for said bank, or while acting in any capacity for said bank, whether with or without authority. Among its employés, whose integrity was insured by virtue of a schedule attached to said bond specifying the names of the bank's employés, was one Simon Goldman, its paying teller, on whom the trust company assumed a risk in the sum of $10,000. During the period covered by the bond, Goldman fraudulently appropriated to his own use moneys of the bank to the amount of about $14,000. This action was brought to compel the defendants below to make the loss good, according to the provisions of the aforesaid bond. The trust company relied for its defense to the suit upon the plea that it had been induced to assume the risk, as far as Goldman was concerned, and to become a surety for his good behavior, by material false representations made by said Goldman and by the cashier of the bank. It alleged, in substance: That, before assuming the risk in question, said Goldman made an application to the trust company to induce the assumption of the risk. That attached to said application, the same being on a printed form furnished by the trust company, was an "Employer's Declaration," which was signed by Charles M. Clinton, cashier of the bank. That said Clinton, as cashier, declared that he had read the declaration and answers made by said Goldman, contained in said application. That, to the best of his knowledge, the answers made were true; and that Goldman was not, to his knowledge, in arrears or in default. That in and by said application Goldman was asked the following questions, and answered them as follows:

"Question. Are you engaged in purely speculative transactions, such as stocks, grain, oil, or real estate? Answer. Have bought and sold real estate. Question. Do you owe your employer anything on any account whatever? If so, state how much, on what account, and when due. Answer. Note, $4,000; due December 2, 1890. Question. Give particulars and amount of any debt you owe or liability you are under. Answer. Yes; $2,000 on real estate."

—That Goldman's answer touching the amount of his indebtedness to the bank was false and fraudulent. That he owed said bank $7,700, in place of $4,000, as stated. And that the declaration made by Charles M. Clinton, as cashier, to the effect that Goldman was not in arrears or in default to the bank, was false and misleading, in this: that, at the time such statement was made, he well knew that said Goldman was in arrears and owed the bank a large sum in excess of $4,000. The plaintiff bank replied to the aforesaid defense by averring, in substance, that after the trust company became aware that Goldman was indebted to the bank in the sum of $7,700, and to other persons in the sum of $5,000, and that the aforesaid statements contained in Goldman's application and in the Employer's Declaration were untrue, it had caused certain deeds of real estate to be executed by Goldman's relatives to secure it against loss by reason of its having executed the aforesaid bond; that it had also brought an attachment suit against Goldman to recover the loss which it had sustained

on said bond, and in such suit had recovered a judgment against Goldman in the sum of $10,000; that, by such acts, it had recognized its obligation on the bond, and had thereby waived whatever defense it might otherwise have urged against a suit to enforce the liability thereby incurred and assumed. The trial resulted in a verdict and judgment against the trust company and the surety company in the sum of $10,000.

The first question to be considered is whether the trial court erred in permitting the jury to determine whether Goldman's answer touching the amount of his indebtedness to the bank was substantially true. With reference to that subject the charge of the court was as follows:

"We assume, for the purpose of this inquiry, that the answer was false, to the knowledge of the bank,—that is, to the knowledge of the corporation; and the question upon that is whether this answer was one which was likely to, and did, mislead the insurance company to its prejudice,—that is to say, whether, this answer being false to the extent of about $3,700 or $3,800, the insurance company was induced to enter into this contract when it would not have done so if the answer had been truthful in respect to these matters. That is regarded as a question of fact, which you must decide upon the testimony,—what, in your observation and your judgment as business men, would be the case if the answer had been truthfully made that the man Goldman was indebted to the bank in the sum of between $3,700 and $3,800 more than the amount of $4,000, which was specified in the answer of Goldman. If, upon that, you say that the company would not have made this contract as to Goldman if they had known of this circumstance, then the company may avoid the contract upon that ground, subject to what I shall say to you presently upon the subject of waiver."

It is obvious, we think, that the statement made by Goldman concerning the amount of his indebtedness to the bank was not a warranty. In suits founded upon insurance policies, which are in all respects analogous to the case at bar, it is held universally that statements made by the insured, to constitute warranties, must enter into and form a part of the contract itself; and, where they are contained in the application, they are always construed as representations, unless, by the express provisions of the policy, the application is made a part thereof, and the intent is manifest to give them the effect of warranties. Besides, as warranties must be literally fulfilled, the courts have always manifested a strong indisposition to regard any statement made by the insured as a warranty, unless such was the obvious purpose of the parties to the contract. Moulor v. Insurance Co., 111 U. S. 335, 341, 4 Sup. Ct. 466; Casualty Co. v. Alpert, 28 U. S. App. 393, 14 C. C. A. 474, and 67 Fed. 460; Campbell v. Insurance Co., 98 Mass. 381, 390; Daniels v. Insurance Co., 12 Cush. 416, 424; Miller v. Insurance Co., 31 Iowa, 216, 227, 228; Chaffee v. Insurance Co., 18 N. Y. 376; Price v. Insurance Co., 17 Minn. 497 (Gil. 473); May Ins. § 183.

In the present case, it appears that the statement made by Goldman, touching the amount of his indebtedness to his employer, is found in the application only. No reference whatever was made to the application in the bond. It does not recite that it was issued in pursuance of a written application made therefor, or on the faith

of the representations or statements therein contained. It is obvious, therefore, that, within the rule above stated, the statement in question must be treated as a representation, rather than a warranty.

Counsel for the trust company insist, however, that, even if the statement be regarded as a representation, it, nevertheless, related to a subject concerning which the trust company, in its printed form of application, had seen fit to make special inquiry, and that it was therefore a material representation, and that the court erred in permitting the jury to determine whether it was material or otherwise. This contention, we think, rests upon a misconception of the meaning of that paragraph of the charge which is above quoted. The trial court did not allow the jury to determine whether the representation related to a material matter. It held, as a matter of law, that the representation was material, but directed the jury to ascertain whether it was so far false and misleading as to render it substantially untrue. The trial court instructed the jury, in substance, that the representation would serve to avoid the bond, if they were satisfied that the trust company would not have assumed the risk, so far as Goldman was concerned, had it known the true amount of his indebtedness to the bank. This direction, we think, was right. If a representation relating to a material matter is substantially true,—that is to say, if it is so far true that the conduct of the insurer would not have been different if it had known the exact truth,—it will not vitiate a policy; and whether it was substantially true or substantially false is a question for the jury. May, Ins. § 186, and authorities there cited. It does not appear to be claimed that the statement contained in the "Employer's Declaration," which was signed by the cashier, was willfully false and misleading. The cashier, as it seems, signed the declaration in haste, without looking at the books to ascertain the amount of Goldman's indebtedness, believing at the time that Goldman had truthfully answered all the questions propounded to him, and without any intent to deceive or mislead the trust company as to the extent of such indebtedness. Under these circumstances, we think that the portion of the charge above quoted stated the law with substantial accuracy, and that the trust company has no just ground for complaint.

The next question for consideration is whether the trial court properly instructed the jury on the subject of waiver. The facts pertinent to this inquiry are as follows: Goldman's defalcation became known about January 9, 1893. In February following, Goldman's father and uncle, at the instance of the trust company, conveyed certain real estate to Charles M. Clinton, cashier of the plaintiff bank, as trustee, for the purpose of reimbursing the trust company for any loss it might sustain in consequence of the defalcation. On January 19, 1893, the trust company also brought a suit by attachment against Goldman, claiming a judgment, which was subsequently obtained on June 20, 1893, for the loss it had sustained in consequence of its having insured his integrity. There was abundant evidence which tended to show, and, as we think, did show,

that early in January, 1893, before the security aforesaid had been taken, and before the attachment suit had been brought by the trust company, it was advised that Goldman's indebtedness to his employer on October 4, 1892, when the bond was executed, was $7,700, instead of $4,000, as represented, but that, notwithstanding such knowledge, it did not deny its liability to make good the loss, or announce its intention to defend against the payment of the loss, until some time in the month of August, 1893.

In view of the facts aforesaid, the trial court instructed the jury:

"That * * * if there was any ground upon which it [the trust company] could resist the payment of the money, or any ground upon which it would admit its liability to pay the money, these things were to be ascertained and determined within some reasonable time; so that we may say that it was the duty of the company to engage in some investigation if it proposed to rely upon any ground that it had been misled and deceived in regard to the bond, and upon which its liability could be avoided."

Then, after referring to the testimony which tended to show that the trust company became aware of Goldman's alleged misrepresentation some time in January, 1893, and after referring to the conduct of the trust company from that time forward until August, 1893, the court concluded:

"Whether the company, by these delays in respect to its proceeding, waived its right to insist upon any avoidance of the bond, is a question for your consideration. And that, I think, gentlemen, covers about the whole ground of the matter which you are to decide between these parties. If you say in the first place that the question of the amount of the indebtedness of Goldman to the bank was a material misrepresentation, and that the policy should be avoided for that reason, then you are to consider whether, by any delay in ascertaining the facts, and in announcing its purpose to resist payment upon that ground, it waived its right to do so."

We think that no material error was committed in this part of the charge. It is now well settled by the decided weight of authority that an insurance company may waive a forfeiture or a defense to an action on an insurance policy, by acts in pais from which an intention to waive may be inferred, and that such a waiver need not be based on a new consideration, or amount to a technical estoppel. If, after a loss has happened, and the fact becomes known to the insurer that a defense thereto exists, or that a forfeiture has been incurred, it takes affirmative action, amounting to a confession of its liability, which induces the insured to believe that the loss will be paid, and to do acts based on such belief which are attended with some trouble or expense, such conduct will amount to a waiver. The rule is that, when an insurance company becomes aware that all rights under a policy have been lost, it cannot, for an indefinite period, disguise its purpose to resist payment of the loss, by affirmative action, which would naturally lead the insured to believe that it admits its liability, and intends to discharge it. Assurance Soc. v. Hiett's Adm'r, 19 U. S. App. 173, 185, 7 C. C. A. 359, and 58 Fed. 541, and cases there cited; Insurance Co. v. Norton, 96 U. S. 234, 241; Insurance Co. v. Eggleston, Id. 572, 577; Titus v. Insurance Co., 81 N. Y. 410, 419; Roby v. Insurance Co., 120 N. Y. 510, 517,

24 N. E. 808; Hollis v. Insurance Co., 65 Iowa, 454, 459, 21 N. W. 774; Insurance Co. v. Gibson, 53 Ark. 494, 14 S. W. 672.

It is manifest, we think, that the conduct of the trust company, in the respects above stated, was such as to fully justify the belief that it acknowledged its liability to make good the loss that had been occasioned by Goldman's defalcation. The bank and the trust company appear to have worked hand in hand for a period of six months to make the loss as light as possible, by securing indemnity from Goldman's relatives, and by bringing suits to subject Goldman's real estate to the payment of the loss. The testimony shows very clearly that such action was taken by the bank, and that a suit on the bond was in the meantime deferred, because it was led to believe that the trust company conceded its liability to respond to the loss, and would in the end pay whatever sum remained to be paid after Goldman's property and the other securities taken from his relatives had been exhausted. Under these circumstances, we are of opinion that the trial court was fully justified in leaving the jury to determine whether the conduct of the trust company did not amount to a waiver of the defense which it had seen fit to interpose. The assignment of error based on that portion of the charge must therefore be overruled.

Complaint is further made of the action of the trial court in excluding an hotel register, which was offered for the purpose of showing that the general manager of the trust company was not in the city of Denver in the months of January and February, 1893. The person in question had testified that he was not there during those months, and that, when there, he usually stopped at a certain hotel. Thereupon the hotel register was offered to show that his name did not appear on the register in either of said months, and the testimony was excluded. This was not a material error. If the register in question had been admitted, on the same principle every other hotel register in the city might have been put in evidence. The fact that a person's name does not appear on the register of a particular hotel, located in a large city, where he usually stops, is entitled to little, if any, weight, in determining whether he was in such city on a given day, or during a given period. Certainly, the exclusion of such testimony does not furnish sufficient ground for the reversal of the judgment.

At the commencement of the trial in the circuit court, counsel for the trust company, as it seems, asked to have the receiver of the bank substituted as the plaintiff in the case, inasmuch as the bank had become insolvent, and a receiver of its affairs had been appointed, subsequent to the institution of the suit. This motion was denied, and an exception was taken by counsel for the trust company. We think that the motion ought to have been allowed, if it was made at the instance of the receiver, and he desired to prosecute the action in his own name; but the denial of the motion is no ground for a reversal of the judgment which was subsequently rendered. The denial of the motion did not prejudice the rights of the

trust company in any respect, and if the receiver desires to be substituted as a party plaintiff, so as to be in a position to control the judgment, on making a proper application to the circuit court he can still be made a party for the purpose above indicated.

Finding no error in the record, the judgment of the circuit court is hereby affirmed.