FIRST NATIONAL BANK *v.* FIDELITY & GUARANTY CO.

(*Nashville.* December Term, 1902.)

1. **FIDELITY BONDS.** Are embraced within statute placing representations and warranties on same footing.

The statute providing that no representation or warranty made in negotiation for a contract or policy of insurance or in any application therefor, shall be deemed material or defeat the policy or prevent it from attaching, unless made with actual intent to deceive, or unless the matter represented increases the risk, applies to fidelity bonds given to an employer to indemnify him from loss by the fraud or dishonesty of an employee. '(*Post, pp.* 19-20.)

Acts construed: Acts of 1895, ch. 160, sec. 22.

Code construed: Sec. 3306 (S.).

2. **SAME.** Representations of insured. Breach of Bond. Questions of fact. Findings of court of chancery appeals thereon, conclusive.

Whether the representations of a bank cashier, made to a guaranty company during negotiations for the issuance of a bond insuring the fidelity of an employee of the bank, were true or made with intent to deceive, and whether there has been a breach of such bond by failure to give prompt notice of an "act capable of giving rise to a claim thereunder," are questions of fact and the findings thereon of the court of chancery appeals are binding and conclusive upon the supreme court. (*Post, pp.* 20-23.)

Cases cited and approved: Missouri, etc., Trust Co. v. German Nat. Bank (C. C. A.), 77 Fed. Rep., 117.

First Nat. Bank v. Fidelity & Guaranty Co.

3. **SAME. RENEWAL OF.** One penalty. Case in judgment.

A bond given by a guaranty company to indemnify a bank for loss occasioned by the fraud or dishonesty of its bookkeeper provided that said guarantor would make good and reimburse said bank to the extent of $7,000, and no further, all pecuniary loss occasioned by said bookkeeper occurring during the continuance of said bond or any renewal thereof. Liability on the bond was limited to one year. A renewal certificate, purporting to be such, and to be subject to the conditions of the original bond, was executed guaranteeing the fidelity of said employee for the following year. By the fraud and dishonesty of said employee, the bank sustained during the first year a loss of $7,217.50, and during the second year, a loss of $13,157.20. Action to recover full penalties of both bonds.

*Held*: That the renewal certificate was a new contract only so far as it extended the indemnity provided by the original bond to another year, and that there was in fact only one bond, with one penalty of $7,000, to which the recovery was limited. (*Post*, *pp.* 12, 23-26.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. H. H. COOK, Chancellor.

STOKES & STOKES, for the Bank.

BOYD & MCNEILLY, for the Guaranty Company.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This bill was preferred by complainant bank against the guaranty company to recover the penalty of a bond executed by the guaranty company to the bank as indemnity against all or any pecuniary loss sustained by the bank, occasioned by the fraud or dishonesty of one W. W. Lea, an individual bookkeeper in said bank, and occurring during the continuance of the bond or of any renewal thereof, and discovered during such continuance or renewal, or any time thereafter.

The bond was in the penalty of seven thousand dollars, and covered any losses occurring between May 1, 1898, and May 1, 1899. This bond was renewed on the 4th of May, 1899, so as to guarantee the fidelity of said W. W. Lea in the sum of seven thousand dollars from the 1st of May, 1899, to May 1, 1900, subject to all the amounts and conditions set forth and expressed in the original bond.

The court of chancery appeals finds that during the period from May 1, 1898, to May 1, 1899, and during the currency of the original bond, complainant bank sustained a pecuniary loss of $7,217.50, occasioned by the fraud and dishonesty of the said W. W. Lea while acting as individual bookkeeper for the bank, and that during the currency of the renewal bond, from May 1, 1899, to May 1, 1900, the bank sustained a pecuniary loss of $13,157.20.

Proofs of loss were furnished the Fidelity and Guar-

anty Company as required by the bond, but the defend-
ant company declined to pay upon the following
grounds set up in its answer, namely: First, that at
the time the bond was executed and delivered by the
defendant guaranty company to the bank, and as a con-
dition precedent to the execution of the bond, the de-
fendant sent the complainant bank, for proper execu-
tion, an employer's statement, in which, among other
questions propounded to the bank, were the following,
viz.: (1) Whether Mr. Lea's accounts had been audited,
and, if so, when, and by whom; (2) whether all the ac-
counts of his office were found in every respect correct;
(3) whether he had been or was then in arrears, default
or with unsettled balance.    The cashier of the bank re-
plied to these questions, viz.: "When last examined or
audited by complainant, on the 22d April, 1898, all the
accounts of his office [referring to W. W. Lea] were
found in every respect correct up to April 22, 1898."

It is further averred in the answer that when the re-
newal bond was executed, May 4, 1899, a similar state-
ment was made by the bank's cashier in reply to the
defendant's question, viz.: "This is to certify that on
the — day of —— the books and accounts of Mr. Lea, in
our employ as ——, were examined by us, and we found
them correct in every respect, and all moneys handled
by him accounted for.    He has performed his duties in
an acceptable and satisfactory manner, and we know of
no reason why the guaranty bond should not be con-
tinued."

The answer then proceeds to aver that these statements were untrue and false, and that the defendant's officers and agents knew them to be untrue and false, or with the least diligence could have ascertained them to be untrue.

It is then averred that, as a matter of fact, at the date of the execution of the first bond, and at the time said statement was made, to wit, on the 28th May, 1898, the defendant Lea was a defaulter to the complainant bank in a sum not less than seven hundred dollars, and that said defalcation had existed for a long time prior to May 1, 1898.

It is further averred that at the time of the renewal of the bond on the 4th May, 1899, said Lea was a defaulter in a sum not less than eight hundred dollars, and that these facts were known to the bank, or by the exercise of ordinary diligence could have been known.

The answer further avers that the statements made by the officers of the bank in respect of the correctness of the accounts of W. W. Lea were warranties to the defendant and inducements for making such bonds, and that said bonds were therefore void because of the breach of said warranties, and because of these untrue and false statements.

The court of chancery appeals finds that there is no controversy in respect of the execution of the bonds, and it is conceded that the premiums were paid. That court further finds there is no question as to the default of the defendant, Lea. It also finds that Mr. Watts,

cashier of the bank, in reply to questions asked by the guaranty company, made the following statement, viz.: "The replies of the applicant herein are, to the best of my knowledge and belief, correct. He has been in the service of the undersigned employer since March, 1875, filling positions of various ——, and has continuously filled the position for which this bond is required since ——, 18—. He has always, to the best of my knowledge and belief, given satisfaction in his personal conduct and performance of duties, and kept his accounts faithfully and without default. When last examined or audited by committee, on the 22d day of April, 1898, all the accounts of his office were found in every respect correct up to April 22, 1898. He has not been, nor is he at present, so far as I know or believe, in arrears, default, or with unsettled balance in this or any previous service. I know of nothing concerning his habits or antecedents affecting his title to confidence, and I know of no reason why the guaranty hereby applied for should not be granted."

When the renewal bond was executed the cashier of the bank, in reply to questions submitted by the guaranty company, filled out the following statement, viz.: "To The United States Fidelity and Guaranty Co.: This is to certify that on the — day of ——, 189—, the books and accounts of Mr. Lea, in our employ as ——, were examined by us, and we found them correct in every respect, and all moneys handled by him accounted for. He has performed his duties in an acceptable and sat-

isfactory manner, and we know of no reason why the guaranty bond should not be continued. His salary is now one thousand, three hundred dollars, and he is employed as bookkeeper."

The court of chancery appeals finds, as a matter of fact, that on the 1st of May, 1898, when the original bond was executed, Lea was a defaulter in excess of four hundred and eighty dollars, two hundred and eighty dollars of which occurred in one account. When the renewal bond was executed, about the 1st of May, 1899, Lea was a defaulter to an amount aggregating about eight hundred dollars.

The court of chancery appeals further finds that the books and accounts of Lea had been examined by a committee of the directors on the 22d April, 1898, who reported in writing as follows, viz.: "On the 18th April, 1898, we, your examining committee, began, and continued until completed, an examination of the affairs of this bank. We find the cash in the hands of the receiving and paying tellers to agree with the amounts shown by the books; the time and demand loans, notes in attorney's hands, bills of exchange, and funds in transit, under charge of the assistant cashier, to balance with the general books. The general accounts balance. The individual accounts were checked and proved to be correct, as shown by the general ledger, except that the bookkeeper from A to K [referring to Lea] was out of balance about four hundred dollars, and the bookkeeper from L to Z about one hundred and fifty dollars. The

committee thinks that these discrepancies will be found by the respective bookkeepers, as they were hurried in going over their books, that the committee might begin their work. We believe that the books are correctly kept, and that the affairs of the bank are in a satisfactory condition."

It appears that after the report was made Lea claimed that he had discovered an error of four hundred dollars, which left the books within twenty-one dollars of a balance. Lea reported this to the committee, and satisfied them and the cashier, Mr. Watts, that his books were out of balance only twenty-one dollars.

The court of chancery appeals finds that when Mr. Watts, the cashier, made the statement to the guaranty company, he knew what the committee had reported, and knew of the subsequent correction of the item of four hundred dollars, but that court finds that the statement was made by him in good faith, and without any knowledge or thought that Lea was a defaulter, and he (Watts) believed, as did the other officers of the bank, that Lea's accounts were substantially correct.

The court of chancery appeals also found that twice each year the United States sent one of its bank examiners to examine the condition of complainant bank, and that during the period when there were six or eight thousand dollars of false entries in the books kept by Lea, but unknown to the bank, the complainant employed E. P. Maxey, who is shown to be an expert bank accountant, to examine the bank's affairs. He spent

110 Tenn—2

thirty days in making the examination, for which he was paid seven hundred and fifty dollars, but he discovered no false entries made by Lea. As already stated, the special committee appointed by the board of directors in April, 1898, examined all the affairs of the bank, including the books kept by Lea, but without discovering any false entries. It appears, says the court, that in some way the committee were deceived by a manipulation of the adding machine by Lea, who obtained and gave them a false addition. But after the committee wrote its report, finding the books out of balance to the amount of four hundred and twenty-one dollars, Lea convinced the committee that he had discovered an error of four hundred dollars, which brought the books within twenty-one dollars of an absolutely correct balance with the general bookkeeper's books. It is shown that Lea had in his charge about one thousand accounts.

The court of chancery appeals concludes on this branch of the case that the committee were justified, on account of the long service of Lea, his good character, and the examination of Mr. Maxey and other bank examiners, in concluding that his accounts were substantially correct.

The court of chancery appeals also finds that the officers and directors of the bank had perfect confidence in Lea, as did Mr. Watts, the cashier, and that when the statement was made to defendant company, it was made in good faith, and without any suspicion that there was anything wrong with Lea's books and accounts, or that

he was a defaulter in any respect or for any amount.

That court also finds as a fact that nothing had occurred up to the time of Lea's vacation in 1900 to put the complainant on notice of any wrongdoing by Lea. The question then presented is, was there such a false representation in the statement made by the bank's cashier to the defendant company as will exonerate it from liability on this bond, and were the statements made material, and did they increase the risk? The committee which made the examination in April, 1898, wound up its report as follows: "We believe that the books are properly and correctly kept, and that the affairs of the bank are in a satisfactory condition."

Section 3306, Shannon's Code, which applies to a case like this, provides that "no written or oral misrepresentation or warranty therein made, in negotiations of a contract or a policy of insurance, or any application therefor by the assured, or in his behalf, shall be deemed material, or defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter represented increases the risk of loss."

The court of chancery appeals finds as a fact that the statement of Mr. Watts was not fraudulent, but made in the utmost good faith.

Further, it is claimed, under the authorities, that the statement of Mr. Watts is not a warranty, but a representation.

Says Mr. May, in his work on Insurance (volume 1,

sec. 184) : "Representations need not, like warranties, be strictly and literally complied with, but only substantially, and in those particulars which are material to be disclosed to the insurers to enable them to determine whether they will enter into the contract, and upon what terms."

The same author, at section 186, says: "Representations of this kind, however, are not strictly warranties and differ from warranties in that a substantial compliance with them is sufficient to answer their terms. Whether there has been such substantial compliance, that is, whether the representation is in every material respect true, is a question of fact for the jury."

In the case of *Missouri, K. & T. Trust Co.* v. *German National Bank* (decided by the court of appeals for the eighth circuit), 77 Fed., 117 (23 C. C. A., 65), the defense interposed by the guaranty company was that, in answer to an inquiry, the indebtedness of the risk (one Goldman) had been placed at four thousand dollars, when, as a matter of fact, it was some $3,700 or $3,800 additional.

Judge Thayer, in delivering the opinion of the court, wrote, viz.: "In the present case it appears that the statement made by Goldman of his indebtedness to his employer, the bank, is found in the application only. No reference whatever is made to the application in the bond. It is obvious that the statement in question must be treated as a representation." He further says: "Counsel for the trust company insist, however, that,

even if the statement be regarded as a representation, it nevertheless related to a subject concerning which the trust company, in its printed form of application, has seen fit to make special inquiry, and it was therefore a material representation, and that the court erred in permitting the jury to determine whether it was material or otherwise. This contention," said the court, "rests upon a misconception of the charge.

"The trial court did not allow the jury to determine whether the representation related to a material matter.

"It held, as a matter of law, that the representation was material, but directed the jury to ascertain whether it was so far false and misleading as to render it substantially untrue."

The court further said, viz.: "If a representation relating to a material matter is substantially true—that is to say, if it is so far true that the conduct of the insurer would not have been different if it had known the exact truth—it will not vitiate the policy, and whether it was substantially true or substantially false is the question for the jury."

Applying these principles, the court of chancery appeals held that, as a matter of law, the statements made by Mr. Watts were material, but found, from the facts and circumstances set out in the record, that Mr. Watts' statements were substantially true. This was a finding of fact which is conclusive upon this court.

That court further said: "We are satisfied that, if

Mr. Watts had fully stated all the facts within his knowledge at that time, the course of the defendant company would not have been different.   He (Watts) was reporting and stating with substantial accuracy the report made by the auditing committee, and this was all that he was purporting to do.   The committee had found and reported substantially that the books were properly kept.   He himself did not undertake to state how the books were kept."

These are all findings of fact, which it is not within the province of this court to review.

It is also well settled, as matter of law, that it makes no difference that a "risk" is at the time a defaulter, and the officers and directors may have negligently failed to ascertain the fact.   The obligee must know and conceal the facts in order to relieve the insurer from liability.   *Guarantee Co. of North America* v. *Mechanics' Savings Bank & Trust Co.* (80 Fed., 766, 26 C. C. A., 146), and many authorities; *Tapley* v. *Martin,* 116 Mass., 275.

It is next assigned as error that the court of chancery appeals failed to find that the following condition of the bond was not breached, viz.: "That, in the discovery of any act capable of giving rise to a claim thereunder, the employer shall at the earliest practicable moment give notice thereof to the company."

The contention of defendant company under this stipulation of the bond was that the bond was executed June 6, 1898, and on the 28th June, 1898, only twenty-

two days thereafter, the report of the auditing committee, which showed Lea's books out of balance four hundred dollars was turned over to the directors and formally entered on the books of the bank, and that the directors did not communicate anything with respect thereto to the defendant company. The argument is that these facts bring this case within the Schardt Case [*Guarantee Co. of North America* v. *Mechanics' Savings Bank & Trust Co.*], reported in 183 U. S., 402 (22 Sup. Ct., 124; 46 L. Ed., 253).

The court of chancery appeals finds that the officers and directors of the bank had not discovered "any act capable of giving rise to a claim" within the meaning of the clause just quoted. The argument of that court is that there might have been clerical errors of thousands of dollars in the accounts, without the fact being capable of giving rise to any claim under the bond. We think this assignment is virtually disposed of by the finding on the first asignment. Moreover, the court of chancery appeals finds that notice was given, and that it was sufficiently prompt.

The seventh assignment is that the court of chancery appeals erred in holding that defendant company was liable for two penalties of seven thousand dollars each. It is insisted by defendant that there was in effect but one bond, and that the maximum liability was only seven thousand dollars, the penalty of the bond; that the last bond was simply a renewal of the first, and was not intended to create a new liability; and that, in legal

effect, the two bonds constitute but one contract, with a single penalty.

It will be observed that the word "renewal" is written in the second bond, and the certificate refers by number to the original bond, and provides that it is subject to all the covenants and conditions set forth and expressed in the original bond. The period covered by the renewal certificate is that intervening between May 1, 1899, and May 1, 1900. The penalty prescribed in the renewal certificate is seven thousand dollars. The original bond expressly provides for a maximum penalty in these words, viz.: "Make good and reimburse to the employer to the extent of seven thousand dollars, and no further, all and any pecuniary loss sustained by the employer, occasioned by the fraud or dishonesty on the part of the employee in the employer's service, and occurring during the continuance of this bond or any renewal thereof, and discovered during such continuance or renewal, or any time thereafter," etc.

The court of chancery appeals held that the original bond and renewal certificate are separate and independent contracts, covering different periods of time. It was held by that court that under the first bond, the company was only liable for a default occurring between the 1st May, 1898, and 1st May, 1899, and under the last bond for a default occurring between the 1st May, 1899, and 1st May, 1900. It was further held that, if the default occurred during the first bond or renewal, under the express language of the bond, the liability attached

First Nat. Bank v. Fidelity & Guaranty Co.

when the default was discovered, whether occurring during continuance of first bond or renewal, and discovered during continuance or renewal or any time thereafter. The court accordingly pronounced a decree for complainants for fourteen thousand dollars, penalties of both bonds.

We are of opinion the court of chancery appeals was in error in this position. The new bond expressly recites on its face that it is a renewal, subject to all the covenants and conditions set forth and expressed in the bond of this company, No. 23717, heretofore issued on the 1st May, 1898. Referring to the original bond, we find it stipulated that the guaranty company will make good and reimburse to the employer to the extent of seven thousand dollars and no further, all and any pecuniary loss sustained by the employer, occasioned by the fraud and dishonesty on the part of the employee in the employer's service, and occurring during the continuance of the bond or of any renewal thereof, etc. So that, under the plain terms of the bond, the maximum liability is seven thousand dollars, and no further, whether the default occurred during the currency of the original bond or during the renewal thereof. Now, it is true that the renewal certificate is a new contract, but it is only a new contract as respects time; that is to say, it extends the indemnity provided by the old contract to a new period of time—May 1, 1899, to May 1, 1900. The parties themselves understood there was only one bond and one penalty. Mr. Watts, cashier of the bank, in the first

First Nat. Bank v. Fidelity & Guaranty Co.

letter written by him to the company, notifying it of Lea's defalcation, said, viz.: "We hold your indemnity bond in the sum of seven thousand dollars on William W. Lea, who was one of our bookkeepers. Said bond is number 23717, dated May 1, 1898, and expired May 1, 1900." This letter, the record shows, was dictated by the counsel for the bank, and shows how the contract was understood and interpreted by the bank before this litigation arose. The officers of defendant company and officers of other similar companies so understood it. We are all of opinion the decree of the court of chancery appeals in this respect was erroneous, and that defendant company is liable in this bond for only one penalty, to wit, seven thousand dollars; and for this amount, with interest from date of filing the bill, a decree will be entered in this court in favor of complainant bank.