### CARROLLTON FURNITURE MFG. CO. v. AMERICAN CREDIT INDEMNITY CO.

(Circuit Court of Appeals, Second Circuit.    July 1, 1903.)

No. 14.

1. INSURANCE—PLACE OF CONTRACT.
    Where an application for insurance was made, the policy was accepted, and the premium paid in Kentucky, no place of payment in case of loss being named therein, the contract was a Kentucky contract, and governed by the laws of that state.
2. SAME—AVOIDANCE OF POLICY—MISREPRESENTATIONS.
    Subsequent to the issuance of a policy insuring plaintiff against losses generally on sales of merchandise in its business to a certain class of

customers, a rider was attached by which it was insured against losses on sales to a particular firm to a limited amount; the rider containing a clause, "all other terms and conditions of the said policy to remain in full force and effect." *Held*, that representations made in the original application as to plaintiff's previous gross sales and losses were immaterial to the particular risk assumed by the rider, and were not incorporated into such contract by the clause quoted, which must be construed as referring only to terms and conditions which were pertinent.

**3.** SAME—MATERIALITY OF REPRESENTATIONS—WHEN QUESTION OF LAW.

Representations made in writing in an application for insurance in response to written questions, and warranted by the applicant to be true, as the basis of the contract, are thus made material by the action of the parties in so treating them; and their materiality is a matter of law, arising from the contract, to be declared by the court, and not a question for the jury.

**4.** SAME—AVOIDANCE OF POLICY—TRUTHFULNESS OF REPRESENTATIONS.

A warranty in an application for insurance must be literally and exactly fulfilled, but a representation is satisfied if it is substantially true; and a slight variance, which would not have influenced the action of the insurer in making the contract, will not defeat the policy.

**5.** SAME—QUESTION FOR JURY.

Whether a representation of fact made in an application for insurance is substantially true or substantially false is a question for the jury.

**6.** SAME—ESTOPPEL.

Defendant issued a policy insuring plaintiff against losses on sales of merchandise to customers having a commercial rating in the last published book of Dun & Co. The application called for a statement by plaintiff of its gross sales and losses each year for the five last preceding years. In an action on the policy, it was shown that the losses during that time largely exceeded the amounts stated in answer to the question; but there was also evidence tending to show that defendant's agent stated to plaintiff that the question called for a statement of the losses only on sales to customers having the commercial rating, which was the class to be insured, and that such agent himself ascertained the amounts from plaintiff's books, and wrote the answers, which were substantially correct as to such losses. Under the state statute, the answers were representations, and not warranties. *Held*, that if plaintiff, in signing the application, acted upon the construction placed by the agent on the question, which was a question for the jury, defendant was estopped to claim that the policy was avoided by the misrepresentation.

On Rehearing. For former opinion, see 115 Fed. 77.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The reargument of this cause was granted upon the application of the defendant in error because it was. urged that the decision of the Supreme Court in Northern Assurance Co. v. Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, was so wide a departure from some of its previous decisions as to virtually overrule them—especially those which had been referred to in the opinion of this court. At the time of the former argument that decision had just been announced, and, although it was adverted to by counsel, it was not cited in the briefs, and was only cursorily discussed; and it was not referred to in the opinion of this court. Upon the reargument, not only has the bearing of that opinion been discussed, but all the questions presented by the writ

¶ 4. See Insurance, vol. 28, Cent. Dig. § 560.

of error have been discussed; and, as one member of the court was present who was absent at the former argument, all the questions have been reconsidered.

In the former opinion the reasons for the conclusion that the contract was a Kentucky contract were not assigned, because we did not suppose that conclusion to be reasonably debatable. Its correctness, however, has been challenged upon the reargument, and the defendant in error insists that the contract was a New York contract. This contention rests wholly upon the fact that the contract, upon its face, purports to have been executed at the city of New York. The policy provides that the proofs of loss are to be presented at the central office of the company, in St. Louis, Mo., and is silent as to the place where payment of losses is to be made. It provides that no claim shall be provable under it for a loss accruing prior to the payment of the premium, "even though the policy has been delivered prior to such payment." When the cause was before this court on a previous writ of error, the facts with reference to the making of the contract did not fully appear, and the contract was held to be a New York contract, because, so far as appeared, the application for insurance was accepted in New York, and the policy had been executed there, and from there transmitted to the plaintiff. It appears by the evidence in the present record that the application for the policy was made at Carrollton, Ky., and forwarded thence to the office of the defendant at St. Louis, Mo., which office seems to have been the principal place of business of the defendant. It further appears that the application was not accepted by the defendant, and, after a correspondence between the defendant and plaintiff, the defendant sent to the plaintiff a policy which did not conform to the original application, or to the terms suggested in the correspondence, with a letter expressing the hope that the plaintiff would accept the policy "as now submitted," and remit a check for the premium. This letter was addressed to the plaintiff at Carrollton, Ky., and thereafter at that place the plaintiff mailed his check to the defendant at St. Louis. Thus the application was made in Kentucky, the policy was accepted in Kentucky, and the premium was paid in Kentucky. The facts bring the case directly within the decision in Equitable Life Assurance Society v. Clements, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497, where the application was made in Missouri, and the policy, although executed in New York, was accepted in Missouri. The court said:

"The conclusion is inevitable that the policy never became a complete contract, binding both parties to it, until the delivery of the policy and the payment of the first premium in Missouri, and consequently that the contract is a Missouri contract, and governed by the laws of that state."

In the former opinion we did not consider and did not intend to decide whether the untruth of the representations in respect to the gross sales and losses should preclude a recovery by the plaintiff for the losses arising upon the sales to Elliott & Cougle. As that question has been somewhat discussed upon the reargument, we deem it proper to give our views in regard to it. By a rider annexed to the policy the defendant undertook to insure the plaintiff against losses

upon sales to that firm to an amount not exceeding $7,500. The rider contained the clause, "all other terms and conditions of the said policy to remain in full force and effect." This was a very different contract from that embodied in the original policy, not being an insurance against losses upon sales to the plaintiff's debtors generally. However influential information as to the amount of the plaintiff's gross sales and gross losses during previous years might be in estimating the risk likely to arise in insuring the plaintiff's debtors generally, it could not be of any importance in estimating the risk arising from sales to a particular debtor. The risk as to the latter would depend wholly upon circumstances peculiar to that debtor—such as the antecedents of that debtor, or the nature of the business transactions and relations between the plaintiff and such debtor. The clause incorporating the other terms and conditions of the policy into the contract made by the rider was not intended to refer to those which were wholly foreign to the particular insurance, and which the parties must have understood to be exclusively applicable to a different class of risks, and it should not be construed as importing into the contract a representation of the truth of immaterial statements.

Upon the question whether the materiality of the representations was for the jury or for the court, in addition to what was stated in our former opinion we quote the language of the court in some of the adjudged cases. In Campbell v. New England Mutual Life Insurance Co., 98 Mass. 402, in an opinion by Gray, J. (the late Justice Gray of the Supreme Court), after stating that where the question of the materiality of the representations depends upon circumstances, and not upon the construction of any writing, it is a question of fact to be determined by the jury, he said:

"But where the representations upon which the contract of insurance is based are in writing, their interpretation, like that of other written instruments, belongs to the court; and the parties may, by the frame and contents of the papers, either by putting representations as to the quality, history, or relations of the subject insured into the form of answers to specific questions, or by the mode of referring to them in the policy, settle for themselves that they shall be deemed material; and, when they have done so, the applicant for insurance cannot afterward be permitted to show that a fact which the parties have thus declared to be material to be truly stated to the insurers was in fact immaterial, and thereby escape from the consequences of making a false answer to such a question."

Lord Chancellor Cranworth, in Anderson v. Fitzgerald, 4 H. L. Cas. 484, used this language:

"Whether certain statements are or are not material, where parties are entering into a contract of life assurance, is a matter upon which there must be a divided opinion. Nothing, therefore, can be more reasonable than that the parties entering into that contract should determine for themselves what they think to be material; and if they choose to do so, and to stipulate that, unless the assured has answered a certain question accurately, the policy or contract which they are entering into shall be void, it is perfectly open to them to do so, and his false answer will then avoid the policy."

In Miller v. Mutual Benefit Life Insurance Company, 31 Iowa, 216–232, 7 Am. Rep. 122, the court observed:

"A misrepresentation by one party of a fact specifically inquired about by the other, though not material, will have the same effect in exonerating:

the latter from the contract as if the fact had been material, since by making such inquiry he implies that he considers it so. In all jurisprudence this distinction is recognized. It is particularly applicable to written answers to written inquiries referred to in a policy. The rule is so because a party in making a contract has a right to the advantage of his own judgment of what is material, and if, by making specific inquiries, he implies that he considers a fact to be so, the other party is bound by it as such."

In Graham v. Fireman's Insurance Co., 87 N. Y. 69-77, 41 Am. Rep. 348, the court said:

"And in a case like this, where a specific inquiry is made, the question of the materiality of the statement in respect to the risk is settled by the parties as a matter of contract. A broad distinction exists whether the statement is made in answer to inquiries or otherwise. In the one case the answers are made material by the act of the assured, whether they are in fact or not, while in the other case, even though the statements are made part of the policy, they are not efficacious as warranties, although material in fact."

In the present policy the application, by its terms, was "made part of this contract of indemnity"; and the application, in terms, warranted the answers to be true, and offered them as a consideration of the policy to be issued. The representations were thus warranted to be true as the basis of the contract, and notwithstanding by the Kentucky statutes they are to be regarded as representations, and not warranties, they cannot be regarded as immaterial representations.

It is urged for the defendant in error that the court below would have been justified in directing a verdict for the defendant upon the facts proven in respect to the gross losses for the year 1891, the amount of which was stated in the application as being $498.90. This contention rests upon the theory that the losses for that year were shown to be in amount $2,813.99, including in that amount a loss upon sales to W. F. Mayer of $1,963.39, and on sales to A. F. Henning of $319.20. There was evidence controverting the existence of the Mayer loss and the Henning loss, and, excluding these from the amount of the losses for that year, it would appear that the losses of the plaintiff were $531.40, instead of $498.90, as represented. Assuming that a discrepancy of $32.50 existed between the losses represented and the actual loss, the trial judge would not have been warranted in directing a verdict for the defendant. Treating the statement in the plaintiff's application as a representation, and not as a warranty, as must be done because of the Kentucky statute, it was for the jury to determine, in view of the insignificant discrepancy, whether the representation was substantially true. A warranty must be literally and exactly fulfilled, but a representation is satisfied by showing a substantial compliance. If it is substantially true (that is, if it is so far true that the conduct of the insurer would not have been different if the exact truth had been represented), the variance will not defeat a policy; and whether a representation is substantially true or substantially false is a question for the jury. 1 May on Insurance (3d Ed.) § 186; Missouri, etc., Trust Company v. German National Bank, 40 U. S. App. 710, 77 Fed. 117, 23 C. C. A. 65.

Upon the remaining question which has been considered upon the reargument, we adhere to the views expressed in the former opinion of the court, and are entirely satisfied that the present case is con-

trolled by the Chamberlain Case, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341, as an authority directly in point which this court, as a subordinate tribunal, cannot disregard. The strict similarity of the two cases leaves no room for an attempt to distinguish one from the other. In this case, as in that, there was an untrue statement in the application signed by the insured; and in this case, as in that, because of the untrue statement the policy was void when it was issued, unless the insurance company was estopped from asserting the untruth of the statement. In this case, as in that, the misrepresentations consisted in an answer to a question in the application, the answer was prepared by ·the agent of the insurance company, and the insured, in making it, acted upon the construction placed by the agent upon its meaning. The two cases cannot be differentiated by any divergence in the contract of insurance between the parties. The policy in the Chamberlain Case provided that "the contract between the parties is completely set forth in this policy and the application therefor taken together, and none of its terms can be modified, nor any forfeiture ·under it waived, except by an agreement in writing signed by the president or secretary of the company, whose authority for this purpose will not be delegated." The contract in the present case provides that the "entire agreement" between the parties shall be constituted by the application and policy, "any verbal or written agreement by any agent of said insurance company to the contrary notwithstanding." The difference in the phraseology of the provisions is immaterial. Each contract makes the application and the policy the complete contract between the parties, and precludes any modification of that contract by any agent of the insurance company, other than a principal officer. The two cases differ merely in the cogency of the evidence to prove the fact that the agent of the insurer, and not the insured, was the responsible author of the misrepresentation. In the Chamberlain Case the evidence was irresistible; in this case it is conflicting, and presents a question of fact for the jury.

In our former opinion we did not advert to the Fletcher Case, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934, because the Chamberlain Case was a later judgment of the Supreme Court, and if there were any conflict in the two decisions the later must prevail, and also because the court distinctly declared in the Chamberlain Case that the Fletcher Case was distinguishable, and a discussion of it "would not serve any useful purpose." The Northern Assurance Case, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, is wider than the Fletcher Case from impinging upon the Chamberlain Case. The policy contained a provision that it should be void if the insured had any other contract of insurance upon the property covered by the policy, and another that no agent or other representative of the insurance company should have power to waive any condition of the policy otherwise than by a written waiver made upon or attached to the instrument. At the time the policy was issued there was a prior insurance upon the property, which had been procured by the insured, and the fact was well known to the agent of the insurance company who procured it and delivered the policy; but there was no written waiver of the condition. The court said:

"Accordingly it is a necessary conclusion that by reason of the breach of the condition the policy became void and of no effect, and no recovery could be had thereon by the insured unless the company waived the condition. The question before us is therefore reduced to one of waiver."

The court decided that the act of the agent in issuing the policy with full knowledge of the prior insurance was not a waiver of the condition by the insurance company, placing its decision upon the principle that the parties had agreed that there could be no waiver unless it should be manifested in writing. In an opinion reviewing numerous adjudged cases, the court reached the conclusion that when the parties saw fit to agree that there should be no waiver, except one in writing, and that no agent of the company should have power to make a waiver in any other way, that contract must stand, and, the contract being in writing, it could not be overthrown or varied by parol evidence of what took place at the time it was made. The principle of estoppel, upon which the Chamberlain Case turned, is not discussed in the opinion, nor is the Chamberlain Case adverted to. In view of the very exhaustive review of the prior adjudications, it is reasonable to assume that the Chamberlain Case was not referred to because its facts so differentiated it that no reference to it was deemed necessary. It is urged by counsel for the plaintiff in error that the Chamberlain Case is overruled or discredited by the Northern Assurance Case. We cannot for a moment assent to this proposition. In the Chamberlain Case the court held that the insurer was estopped from adopting a different meaning to an answer to a question in an application from that given to it by its agent who procured the application. In the Northern Assurance Case the court held that the insurer had not waived a condition of its policy by the verbal waiver of its agent, because the contract precluded such a waiver, and required one manifested in writing. In the Chamberlain Case the insurer was charged with knowledge when it received the premium that the policy was void if the condition could be treated as operative. In the Northern Assurance Case the insurer was not charged with such knowledge, because by the force of the contract the knowledge of its agent was not its knowledge, unless manifested by written evidence. The two decisions proceed upon different lines. We think there is no inconsistency between them, and, if there were, it is not for this court to assume that the Supreme Court intended to overrule the Chamberlain Case by indirection. As we stated in our former opinion, the Chamberlain Case was approved, and the principle of the decision followed, in McMaster v. New York Life Insurance Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64—a case decided at the same term as the Northern Assurance Case. It is inconceivable, in view of this fact, that the court overlooked the Chamberlain Case. If the policy in the Chamberlain Case had contained a provision that no estoppel could arise out of the act of an agent, which should be binding upon the insurance company, unless evidenced in writing upon or attached to the policy, the two cases might be irreconcilable; but, had that been so, we should not feel justified in holding that the Chamberlain Case had been overruled or discredited by the Northern Assurance Case, when it was not referred to in the opinion in the lat-

ter case, and when it was expressly approved in another opinion of the court delivered at the same term.

Our former decision reversing the judgment is reaffirmed.

COXE, Circuit Judge. I concur in the result but am not prepared at this time to indorse the view taken in the opinion as to the Elliott & Cougle claim.