EZRA C. ADAMS ET AL. V. GRAND LODGE OF ANCIENT ORDER
OF UNITED WORKMEN OF NEBRASKA.

FILED NOVEMBER 19, 1902.     No. 12,278.

Commissioner's opinion, Department No. 1.

1. Insurance: RECEIPT OF MONEY BY FINANCIAL OFFICER OF SUBOR-
DINATE LODGE. Mere receipt of money by the financial officer
of a subordinate lodge of a benevolent association is not of
itself a waiver of other conditions for the reinstatement of a
suspended member, especially when the receipt is accompanied
by an express requirement of the other conditions.

2. ——: ——: LIABILITY: GRAND LODGE. Where no authority
over the payment of death benefits in the subordinate lodge,
or its officers, is shown, their negotiations and dealings with
the beneficiaries after the assured's death can establish no lia-
bility on the part of the grand lodge.

3. ——: ——: ——. After liability has been denied by the grand
lodge, and payment made for the purpose of reinstatement
tendered back, the fact that a member of the grand lodge's
finance committee invited plaintiff's attorney to lay his case
before the whole committee for action by it, was not a binding
admission of liability, though it involved some expense to plain-
tiff to do so.

4. Statement by Member of Finance Committee: WAIVER. The ex-
pression to a beneficiary by one member of such finance com-
mittee, when shown, after the assured's death, the receipt sent
to assured for his last payment, that it fixed defendant's lia-
bility, was not a waiver of forfeiture.

ERROR from the district court for Douglas county. Ac-
tion by Ezra C. Adams, individually and as guardian of
Anson Adams, against the Grand Lodge of Ancient Order
of United Workmen of Nebraska, upon a benefit certificate.
Tried below before SLABAUGH, J. Judgment for defend-
ant. Plaintiff brings error. *Affirmed.*

*Virgil O. Strickler,* for plaintiff in error.

*James W. Carr* and *Matthew Gering,* contra.

HASTINGS, C.

This is a suit upon a benefit certificate issued by the de-
fendant in error to one Charles W. Adams, September 20,

1886. Mr. Adams was in good standing up to February 28, 1899. Then, by reason of a failure to pay an assessment which became due February 1, he is alleged to have become suspended, under a provision of the by-laws of the order that such delinquency should of itself and without any action by the defendant or its officers, work a suspension. On March 6, 1899, his suspension was noted on the books of the subordinate lodge and reported to the grand lodge. Another assessment fell due March 1, and was not paid and became delinquent March 28, 1899. April 18, 1899, after he had been suspended more than thirty days, he procured an express money order at Lincoln, Nebraska, for $5 and sent it to John Carnaby, the financier of his subordinate lodge, with the following letter:

"LINCOLN, NEBR.,..........189..
*"To John Carnaby, Omaha, Nebr.*

"FRIEND JOHN: I enclose $5 to apply on account. I don't know how I stand with the lodge; have been knocked out for some weeks and just getting around again. Please address me care Lincoln Hotel, room 326, Lincoln, Nebr.

"Yours truly,          C. W. ADAMS."

This letter was postmarked at Lincoln, April 18, 1899, and was received on April 19, 1899. Mr. Carnaby says that he received the letter, and replied, as nearly as he can remember, in the following terms:

"BROTHER ADAMS: I received your letter with the enclosed Pacific Express order for $5. Enclosed you will find receipt for same. You will also find health certificate which you must properly sign and forward on to me as you can not be reinstated until I receive the same."

He says that he included with this letter a blank certificate of health in the required form, which is as follows:

*"To the Grand Lodge of the Ancient Order of United Workmen:*

"I, ——— to whom Beneficiary Certificate No. ——— was issued in Lodge No. ...... of the Ancient Order of United Workmen, of the state of Nebraska, having been

suspended from all rights, benefits and privileges of the order, and having forfeited all my rights as a member of the order, by reason of non-payment of assessment No.....  which suspension and forfeiture occurred within a period of three months prior to the date of this certificate, and desiring to be reinstated in said order, as provided by the laws thereof, do hereby certify that I am, at this date, in sound bodily health, and that I agree that the reinstatement of myself as a member of the order, based upon the certificate, shall be valid and binding only upon the condition that the statement herein contained, relating to my bodily health, is true in every respect upon the day and date recorded on this certificate.

. . . . . . . . . . . . . . . . . .

"Attest: . . . . . . . . . . . . . . ."

He wrote a receipt for the amount and inclosed the letter, health certificate and receipt, in an envelope addressed to C. W. Adams, Lincoln, Nebraska, and deposited the envelope, with postage prepaid, in the post office at Omaha on the morning of April 21. No reply was ever received and no health certificate ever returned. The money order was held, pending a reply, and appears with the evidence in the case. On that day C. W. Adams died suddenly of apoplexy. The beneficiary named in his certificate was his wife. She, however, had died in 1898. Plaintiffs were his sons, and by the rules of the order were entitled to receive the benefit if he had been in good standing. Ezra C. Adams found the benefit certificate among his father's papers, and was appointed guardian for his brother, and says he notified the subordinate lodge of his father's death and never learned of any objections to the sufficiency of such notice. In 1897 Mr. Adams seems to have been suspended for more than three months, and was reinstated on an application and medical examination. In this second application he expressly agreed to comply with the regulations and requirements of the supreme lodge of the order as then existing. The laws of the order adopted in 1897, as testified to by the grand recorder, Barber, provided as follows:

"Sec. 4. There shall be due as a regular assessment, without notice, on the first day of each month, from each workmen degree member in good standing of this jurisdiction, the sum of one dollar, payable to the financier of his lodge, on or before the 28th day of the month, Provided, that if there is no assessment for that month, or if there be two or more assessments for the month, notice thereof shall be published in the official organ of the order, or in such other manner as the grand lodge may prescribe."

Section 5 of article 7 of defendant's constitution provided that each member who had not paid his assessment on or before the 28th of the same month should, by the fact of such non-payment, stand suspended, and no action on the part of the lodge or its officers would be required to effect such suspension; and section 6 of the same article provided that after such suspension, a certificate might be renewed within three months by the payment of all assessments during the time of suspension, but after thirty days' delinquency a certificate of good health must be furnished upon the blank required by the order; that the renewal should be reported to the lodge at its next meeting, and a vote taken, and if the majority was in favor of reinstatement, the member should be reinstated, and when all these conditions had been complied with, the certificate should be renewed in full force, and not before. It was further provided that a member should have no claim upon the beneficiary fund during suspension.

Ezra C. Adams testifies to receiving from the mail, on the day of his father's death, a receipt for the $5, but does not know whether the letter or blank certificate accompanied it or not. Notice had been given to produce the letter and health certificate, and no objection is now made that the evidence as to them is incompetent. The plaintiffs tendered proof that it was Mr. Adams's custom to pay his dues from time to time in the lump sum in the manner in which they were transmitted at this time, but the evidence was rejected. There seems to have been both talk and correspondence between Ezra C. Adams, the older son, and the

officers of the subordinate lodge, and the latter seem to have promptly informed the parties of the suspension of the father, and to have interested themselves somewhat to secure the payment of the benefit by the grand lodge officers. It appears by the minutes of the grand lodge proceedings that the facts in this case were laid before it, and the whole matter referred to the master workman, grand finance committee, and that on laws and supervision. The grand lodge officers refused to furnish blanks for proof of death, on the ground that the assured had been suspended; and this was reported to plaintiffs. The subordinate lodge officers had exerted themselves to ascertain the facts as to Mr. Adams's death, and that of his wife, and who were the surviving children, and made a report to the grand lodge officers on May 3; they seem to have requested Ezra C. Adams to obtain for them some of these facts. The action of the subordinate lodge seems to have been taken principally at the request of Ezra C. Adams. The sworn statement of the undertaker and physician showing the death of Mr. Adams on April 21 was furnished. Mr. Ezra C. Adams had some conversation with a Mr. Jaskalek, a member of defendant's finance committee; to Mr. Jaskalek, Mr. Adams seems to have shown the receipt for $5, and was told by Mr. Jaskalek that he supposed that was sufficient or, as the witness expressed it, "a cinch," and that of course the benefit would be paid. Plaintiffs tendered evidence of Ezra C. Adams to show that his father was in Omaha the Sunday before his death, and to all appearance in his usual health, but this evidence was refused.

It is complained that there is no competent evidence to show that there was an assessment due on the 1st day of February, 1899, but there seems to be no foundation for this objection. The proof as to the adoption of the amendment to the constitution establishing a regular assessment for each month seems ample, and we find no question in this case except as to a waiver of the suspension. The waiver is claimed, first, on the ground of accepting the money, but the money was only received conditionally, the

express order was never cashed, and the undisputed evidence shows that the receipt for it was accompanied by the express requirement of the health certificate, and the mailing of the blank for that purpose. Members must be presumed to have known the regulations as to a health certificate, and it appears that the assured had been suspended before. It seems clear that the production of this health certificate was necessary to the reinstatement, and there is nothing in the facts shown to indicate any waiver of its production on the part of the subordinate lodge officers, even if it was held to be within the power of such officers to waive it. The proceedings subsequent to the death of the assured did not amount to such a waiver. Of course, there could be no reinstatement of the assured after his death. The beneficiaries were informed of his suspension; the conversation with Mr. Jaskalek of the finance committee was certainly not a waiver of such suspension. It seems to have been had before he was informed of the facts. He was only shown the receipt. He thereupon is said to have remarked: "That is a cinch, of course you will get it." The correspondence in the record shows that the son of the assured was informed of the suspension, though he does not remember it. The assisting in a fraternal way to care for the body of their former member by the officers of his lodge, and their evidently sincere efforts to get all of the facts before the grand lodge, and to obtain payment of his death benefit, are entirely creditable to them, but do not alter the legal relations of the parties. Whatever the functions of the local lodge officers as to collecting dues, and whatever they may be able to waive as to the time and manner of collecting them, they are not the paying body. They have no authority as to the paying of death benefits, and their negotiations with the beneficiaries after the assured's death can establish no liability.

It is claimed that the fact that after the denial of liability, and after the tender back of the money order, one of the members of the grand lodge finance committee expressed a wish that the plaintiff's attorney should present

his case to the whole committee at Grand Island, and that he did so at an expense of about $8, was a waiver of the forfeiture. It is clear, however, that the precise question under consideration was whether the forfeiture should be considered waived, and the committee was merely undertaking to consider that question. Whatever view may be taken of the authority of subordinate lodge officers to waive requirements as to payment of assessments and provisions for suspension, it seems clear that in this case the member was properly suspended, and died without reinstatement, and no liability attaches to defendant.

It is recommended that the judgment of the district court be affirmed.

KIRKPATRICK, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.