CHRISTINE SOEHNER V. GRAND LODGE, ORDER OF SONS OF HERMAN.

FILED SEPTEMBER 20, 1905.    No. 13,789.

1. **Insurance:** MUTUAL BENEFIT ASSOCIATION. A certificate of a mutual association will be treated as a contract of insurance between the member and the association.

2. **Payment of Assessments.** Where by the constitution and by-laws of a fraternal benefit society it is made the duty of the members of such society to pay their assessments and dues to the secretary of the local lodge to which they belong, such secretary in receiving such dues and assessments acts as the agent of the grand lodge of the order which issues the certificate.

3. **Forfeiture:** WAIVER. If, with knowledge of the facts by reason whereof it is entitled to claim a forfeiture, the insurer continues to treat the policy as in force, or does any act inconsistent with an intention to insist upon the forfeiture, the forfeiture is waived. *Hunt v. State Ins. Co.*, 66 Neb. 125, followed and approved.

4. **Conditions** in a policy of insurance limiting or avoiding liability are strictly construed against the insurer and liberally in favor of the assured.

5. **Directing Verdict.** *Held*, under the facts and circumstances shown by the record in this case, that it was error to direct a verdict for the defendant.

ERROR to the district court for Cedar county: GUY T. GRAVES, JUDGE. *Reversed.*

*John Bridenbaugh,* for plaintiff in error.

*B. Ready* and *J. C. Robinson, contra.*

OLDHAM, C.

This was an action on a fraternal benefit certificate issued by the grand lodge of the Order of the Sons of

Herman to Jacob Soehner on his becoming a member of the fraternal insurance society and the payment by him of the dues required by the society on the 21st day of February, 1899. By this certificate the association, on proof of the death of Jacob Soehner, promised to pay to plaintiff, the wife of Jacob Soehner and the beneficiary named in the certificate, the sum of $500. The petition alleged the issuance of the certificate and the full compliance by Jacob Soehner with the constitution, by-laws and rules of the order, and payment in full of all dues and assessments required by the rules of the association and by the terms of such certificate and policy of insurance; and that on the 25th day of September, 1902, the said Jacob Soehner died from the effects of having been struck and run over by a railroad train; and that notice of the death was properly communicated to the defendant, and defendant refused and failed to pay the amount due plaintiff on the benefit certificate. The answer admitted that the defendant was a fraternal benefit society organized under the laws of the state of Nebraska, and that plaintiff was the wife of Jacob Soehner, and that defendant had issued the certificate alleged on in the petition. The answer then sets up the application of Jacob Soehner for membership in the order, the material provision to the questions now in issue, which was that "I further agree that I will comply with all the laws, rules and regulations now in force and those which may hereafter be adopted, and this fact shall be the specific reason which will entitle me to the insurance and all other provisions and benefits of the order." The answer then alleges that at the time of the death of deceased, and for more than two years prior thereto, the laws of the order governing the payment of dues were as follows:

"Art. 17. Par. 1. Members who have failed to pay their lodge dues, insurance assessments and fines within 30 days, figured from the date of making the assessment, shall be suspended *ipso facto,* and shall lose all rights to

which they would otherwise be entitled, and it shall need no special order or notice on the part of the order.

"Par. 2.    Such suspended members, whether such suspension is on account of failure to pay lodge dues or insurance assessments, shall lose all rights to which they would otherwise be entitled, and the certificate of insurance shall be null and void.    *    *    *

"Par. 3.    A suspended member can be reinstated if he pays all arrearages within 30 days from date of suspension.    He can also be reinstated if he makes written application for reinstatement to the local lodge within three months of the date of suspension and pays all lodge dues, insurance assessments and fines.    To be reinstated at this time, however, requires a two-thirds of all the votes cast by ballot in favor of such reinstatement at a meeting of the local lodge.

"Par. 4.    Former members who have been suspended more than three months can be reinstated to their rights only when they follow the same proceedings as for the taking in of new members, yet there must be an examination by a physician.    In such cases, however, the initiation can be dispensed with, provided he applies within six months from the date of the suspension."

The answer further alleges that assessment numbered 4, payable during the month of April, had not been paid by the deceased or anyone for him, nor have assessments numbered 5, 6, 7, 8 and 9 of the series of 1902 been paid, the same being the assessments for the months of May, June, July, August and September; that according to the laws and obligations above set forth Jacob Soehner thereby forfeited his certificate of insurance, and such forfeiture was entered on the records of the grand lodge of said Order of Sons of Herman by the secretary thereof on the 1st day of May, 1902; and that the deceased had failed to make any application or a request for reinstatement, and never has been reinstated, and this defendant is relieved of said lodge certificate of insurance.    A reply was filed to this answer in the nature of a general denial;

29

and on issues thus joined there was a trial to a jury, and at the close of the testimony offered by both plaintiff and defendant the court directed a verdict for defendant and entered judgment on such verdict, and to reverse this judgment the plaintiff brings error to this court.

In addition to the by-laws set up in the answer of defendant the following provisions of the benefit certificate were offered and admitted. "Art. 2. Membership. (1) All the members of all the lodges of the Order of the Sons of Herman in the state of Nebraska are firmly bound in the case of death of a brother who is entitled according to the constitution and by-laws to the sum of $500 to pay the same to such person or persons as was designated in his application by the deceased member as the recipient of the insurance money. (2) The assessment for the making up of this sum shall be made from all the members of the order in the state in the following manner: Members from 18 to 30 years of age, 30 cents; 30 to 38 years of age 40 cents; 38 to 40 years of age 50 cents. (3) By the first of each month each member of the order shall pay to the secretary of his lodge his assessment to the mortuary fund, which assessments are to be sent not later and within the 10th of the same month by him to the grand secretary," etc., "and the grand secretary is required to forward receipt, which receipt must be laid before the lodge at the next meeting. * * * (5) If a member has not paid his assessments 30 days after the calling in day, he shall be suspended for 30 days; if he pays within this time, he is reinstated into his rights; if he does not pay, he is to be stricken off the membership list. (6) If the mortuary fund amounts to more than $3,000 through the monthly assessments of the members, the executive committee is empowered to postpone the next following assessment for an indefinite time."

The by-laws pleaded in defendant's answer were adopted after the benefit certificate was issued. The last provisions set out were in force and embodied in the certificate at the time it was issued. The material evidence

introduced at the trial was that on the 13th of September
Jacob Soehner paid to the local secretary of the lodge,
Lewis Ottenheimer, the assessments for April, May,
June, July, August and September, and arrears of dues
for the third and fourth quarters, and his *per capita* tax,
and received a receipt in full of such payments from the lo-
cal secretary; that on the 25th day of September he was
killed in a railroad accident, and that notice of his death
was properly communicated to the defendant lodge.    The
evidence showed that the local secretary had repeatedly
requested Soehner to pay his arrearages to the lodge.    The
local secretary testified on behalf of defendant, and over
defendant's objection, that, when he received the money
from Soehner and gave him a receipt in full for his ar-
rearages, he told Soehner that he had been out so long
that he was scratched off, but that he would write to the
grand secretary and see if he would accept the money,
and, if he did, it would be all right.    The record of the
grand secretary was introduced, which showed after the
name of Soehner, on date of July 1, a German word,
which translated meant "scratched off."    There is no
evidence, however, except the entry itself, as to when this
word was written after the name of Soehner.    When the
local secretary received the money, he did not write to the
grand secretary, as he said he had agreed to do, until
after the death of Soehner.    He then wrote to the grand
secretary, without inclosing the money, and the grand
secretary declined to receive it, and so far as the evidence
shows the local secretary still has the money in his pos-
session.    This is all the evidence material to the issues
contained in the record.

We have set out the material conditions of the policy,
the application and the constitution and by-laws of the
of the association, because they, when not in conflict with
the statute authorizing such organization, constitute the
contract between the member and the association.    While
in the early days of the existence of fraternal benefit as-
sociations a different view of their relation to their mem-

bers was entertained by some of the courts of the United States, the very strong trend of modern decisions is to treat a benefit certificate as a contract of insurance between the member and the association, and this modern doctrine has received the approval of this court in the very recent case of *Modern Woodmen of America v. Colman*, 64 Neb. 162. It is not the policy of the law to favor forfeitures, and it is the tendency of courts to regard a provision in the constitution or by-laws of a benefit society that a member not remitting his assessments within a specified time shall forfeit his claim to membership as not a self-executing provision, but one which requires affirmative action of the association by declaring a forfeiture. *Northwestern Traveling Men's Ass'n v. Schauss*, 148 Ill. 304. In fact, the strong tendency is to construe the by-laws and constitution liberally in favor of the assured.

In the instant case it is contended on the part of the insurance company that Jacob Soehner was suspended by the affirmative action of the grand lodge on the 1st day of July for his arrearages. But there is no evidence that the local lodge was ever notified of this suspension, if it were actually made at that time. Section 3 of the by-laws pleaded in defendant's answer provides that the suspended member can be reinstated by paying all arrearages 30 days from date of suspension. Under this section of the by-laws all he has to do is to pay his arrearages. It is also provided that after his suspension for three months he may by a two-thirds vote of the society be reinstated on payment of arrearages. Now, assuming that Soehner was suspended on July 1 by the grand lodge, he had not been out of the order three months at the time he paid all arrears to the local secretary. While there is no specific provision for reinstatement between 30 days and three months, yet, fairly and liberally construed, any member of this order in arrears may within three months of his suspension be reinstated by paying his arrearages, when the money is accepted without a vote of the lodge.

By section 3 of the constitution and the conditions of the policy it is made the duty of each member to pay his dues and assessments to the local secretary of his lodge, and the duty of the secretary to remit to the grand secretary, and the grand secretary to return a receipt to be read in lodge. Under such a provision as this the local secretary becomes the agent of the grand lodge in receiving dues and assessments from its members. In *Supreme Tribe of Ben Hur v. Hall,* 24 Ind. App. 316, it is said:

"The duties of an officer determine the question of his agency, and not what he may be called. He is the agent of the supreme tribe for doing what its by-laws require him to do as between the members of the order and the supreme tribe"—citing *Supreme Council of the Catholic Benevolent Legion v. Boyle,* 10 Ind. App. 301; *Germania Life Ins. Co. v. Lunkenheimer,* 127 Ind. 536.

If, then, the local secretary of the lodge was the agent of the grand lodge in the receipt of dues and assessments from the members of the local organization, the question arises as to whether the receipt by him to Jacob Soehner for all past due assessments and *per capita* tax amounted to a waiver of the conditions of the by-laws providing for the suspension of a member in arrears more than 30 days. In the very recent case of *Hunt v. State Ins. Co.,* 66 Neb. 125, it was said by this court: "If with knowledge of the facts by reason whereof it is entitled to claim a forfeiture, the insurer continues to treat the policy as in force, or does any act inconsistent with an intention to insist upon the forfeiture, the forfeiture is waived"—citing in support of this proposition, *Hughes v. Insurance Company of North America,* 40 Neb. 626; *Rochester Loan & Banking Co. v. Liberty Ins. Co.,* 44 Neb. 537; *Home Fire Ins. Co. v. Kuhlman,* 58 Neb. 488.

In Richards, Insurance, sec. 76, the author says: "Universally it is held that the acceptance of an assessment or premium by the home office is a waiver by the company of all former grounds of forfeiture known by it." To the same effect is the holding in *Supreme Tribe of*

*Ben Hur v. Hall, supra,* and *Masonic Mutual Benefit Ass'n v. Beck,* 77 Ind. 203, 40 Am. Rep. 295.

In *Queen Ins. Co. v. Young,* 86 Ala. 424, 5 So. 116, it is said: "Conditions in a policy of insurance, limiting or avoiding liabilty, are strictly construed against the insurer, and liberally in favor of the assured. Though a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. * * * If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture" —citing *Titus v. Glen Falls Ins. Co.,* 81 N. Y. 410.

A fraternal benefit association, as defined by section 91, chapter 43, Compiled Statutes 1903 (Ann. St. 6483), is "a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit." Section 92 requires such association to make provision for the payment of benefits in case of death, and permits provisions to be made for the payment of benefits in case of sickness, etc. Section 93 provides that the funds from which benefits shall be paid and the expenses of the society defrayed shall be derived from beneficiary calls, assessments or dues collected from the members. Under the by-laws and constitution of the Sons of Herman, as before set out in this opinion, assessments for the mortuary fund were made monthly, according to the age at which the member was admitted, until the fund reached a certain stipulated amount, when the calls might be suspended. by the grand secretary. In other words, both under the statute and the by-laws of the order these assessments were levied under the direction of the grand lodge. While there is some question interposed about the legality of

these assessments, yet this question we think does not arise and cannot be considered under the pleadings filed and issues raised in this case. Plaintiff tried the case on the theory that the assessments had been legally levied and had been paid by her husband. Defendant tried it on the theory that all these assessments from April to September, inclusive, had been legally levied, and that Jacob Soehner was in default for nonpayment of each one and all of them. Then the question arises whether or not the action of the lodge in assessing the deceased member Soehner for the months of August and September is consistent with its theory that he was suspended in July. In *Stylow v. Wisconsin Odd Fellows Mutual Life Ins. Co.*, 64 Wis. 224, it is said by the supreme court of Wisconsin:

"Every time the company makes an assessment against the assured after he has failed to pay a previous assessment within the time prescribed by the rules, it waives the forfeiture of the policy for such failure to pay and admits him to be a member of the company notwithstanding such failure."

It is urged by counsel for defendant in error that under the rule laid down by this court in *Adams v. Grand Lodge A. O. U. W.*, 66 Neb. 389, the receipt of the money by the local secretary was not sufficient to show a waiver of other conditions for the reinstatement of a member, especially when the receipt is accompanied by an express requirement of compliance with other conditions. In the case just cited, the member of the order had been suspended and so entered on the books of the local as well as the grand lodge. When he applied for reinstatement, the rules of the order required, in addition to the payment of dues, the production of a health certificate from a physician. The finance officer notified him of this condition, and furnished him a health certificate to return properly executed by a physician. This the member neglected to do. The evidence in this case also shows that the member himself was fully familiar with the rules, and

had been suspended and reinstated under these rules before this time. In the case at bar, there was no requirement under the rules for a health certificate, or anything, as we have pointed out, but the payment of arrearages. This the member did. So that the only question in this case, if there be one at all, is whether or not the alleged conversation between him and the local secretary was sufficient to inform the member that the local secretary would hold the money subject to the action of the grand secretary. No condition was named in the receipt executed and delivered by the local secretary, and no explanation is made as to why the assessments were charged against the deceased member, when the grand secretary was insisting that he had been "struck off." It seems to us that under this peculiar condition the question of the understanding between deceased and the local secretary at the time the payment was made was at least one of fact for the jury. In *Thibert v. Supreme Lodge Knights of Honor*, 78 Minn. 448, 81 N. W. 220, under conditions very similar to those in the case at bar, it was said by Collins, J., in rendering the opinion: "But, in any event, the question whether the reporter gave the notice testified to was for the jury; taking into consideration, as we must, that Thibert, who alone could deny the conversation, was dead, and could not be heard."

We are therefore of opinion that the district court erred in directing a verdict for the defendant, and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

AMES, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.