### ST. PAUL FIRE & MARINE INS. CO. v. RUDDY et al.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1924.)

No. 6419.

1. **Insurance** ⬌146(2)—**Language of policy, if unambiguous, is to be given ordinary meaning.**

Insurance contracts are construed, like other contracts, according to the ordinary sense and meaning of the terms employed, and if they are clear and unambiguous their terms are to be taken in the plain, ordinary, and popular sense.

2. **Insurance** ⬌146(3)—**Ambiguous provisions of policy to be construed against insurer.**

If a policy is ambiguous or doubtful, or language calculated to mislead is used, courts lean to a construction that will not permit the insurance company to take advantage of the ambiguity.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Insurance ⚙⟶328(1)—Provision for termination in case of change of title is valid.**

A provision of a policy that it shall terminate in case of change of title to the property is proper and valid.

4. **Insurance ⚙⟶124—Essentials of contract.**

An insurance contract is a personal one between the insurer and insured, and is no different from any other contract in the respects that there is no contract unless the minds of the parties meet, that, if there is no obligation as to one of the parties, there is none as to the other, and that, if anything of importance remains to be done by either party, the contract is not complete.

5. **Insurance ⚙⟶207(2)—Letters held not to create contract between insurers and purchaser of property.**

A purchaser of insured property advised the insurer by letter of the purchase and inquired about the terms and date of expiration of the policy. The reply gave the information and stated that, if he wished the insurance transferred, he should have the policy assigned and forwarded, and "we will consent to the transfer." Nothing further was done, though two months elapsed before the property was destroyed, and the purchaser did not have nor see the policy until after the loss. *Held*, that no contract was made between the insurer and purchaser which effected a transfer of the policy.

6. **Insurance ⚙⟶328(1)—Transfer of property without consent of insurer held to avoid policy.**

Under a provision of a policy that, unless otherwise provided by indorsement thereon, it shall be void if any change take place in the title to the property other than by death of insured, the policy is avoided by a transfer of title without consent of the insurer.

7. **Insurance ⚙⟶388(3)—Recognizing policy as in force after breach is waiver of breach.**

Any act done by an insurer, after knowledge of breach of condition, which recognizes the continued existence of the policy, constitutes a waiver of its right to avoid the policy therefor.

8. **Insurance ⚙⟶393—Offer to transfer insurance to purchaser, not effected, held not a waiver of condition of policy.**

Under a provision of a policy that it should be void if title to the property changed, unless otherwise provided by agreement indorsed thereon, the insurer, by offering to consent to the transfer of the insurance to a purchaser of the property, if a proper assignment of the policy was made, did not waive the right to insist on the invalidity of the policy, where no assignment was made and the transfer was not effected.

9. **Insurance ⚙⟶309—Statute held not to apply, in absence of contractual relationship between the parties.**

Rev St. Neb. 1913 § 7787, providing that a breach of condition shall not avoid a policy, unless it existed at the time of loss and contributed to the loss, as construed by the Supreme Court of the state, does not apply, in the absence of contract relationship between the parties.

10. **Insurance ⚙⟶311(3)—Right of mortgagee to recover depends on right of insured.**

Under the standard mortgage clause of a policy providing that any loss thereunder that may be proved due the assured shall be payable to the assured and the mortgagee, the mortgagee is the appointee of the insured to receive the money, or a portion of it, and if the insured cannot recover the mortgagee cannot.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by Michael E. Ruddy, wherein Cress J. Bernard intervened, against the St. Paul Fire & Marine Insurance Company.

⚙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Judgment for plaintiff and intervener, and defendant brings error. Reversed and remanded, with directions.

Matthew A. Hall, of Omaha, Neb. (Carroll S. Montgomery and Raymond G. Young, both of Omaha, Neb., on the brief), for plaintiff in error.

F. G. Hawxby, of Auburn, Neb. (Lambert & Hawxby, of Auburn, Neb., and E. F. Dougherty, of Omaha, Neb., on the brief), for defendants in error.

Before STONE and KENYON, Circuit Judges, and PHILLIPS, District Judge.

KENYON, Circuit Judge. This action is based upon an insurance policy issued by plaintiff in error to Smith & Bernard, insuring them for one year, from the 25th day of March, 1921, to the 25th day of March, 1922, against loss or damage by fire on a certain two-story composition-roof brick building situated in Howe, Neb. June 1, 1921, Smith & Bernard sold the insured premises to one Louis N. Iverson. An indorsement was placed upon the policy as follows:

"Indorsement.

"Notice is hereby given and accepted that title to property insured herein is vested in Louis N. Iverson.
"Attached to and forming a part of policy No. 17660 of the St. Paul Marine Insurance Company, St. Paul, Minnesota, issued at its Omaha, Nebraska, agency.                                      W. C. Lyle, General Agent.
"Dated this 10th day of June, 1921."

A loss payable clause was also indorsed at the same time as follows:

"Loss Payable Clause.

"Any loss under this policy that may be proved due the assured shall be payable to the assured and Cress I. Bernard, subject, nevertheless, to all the terms and conditions of the policy.
"Attached to and forming part of policy No. 17660 of the St. Paul Fire & Marine Insurance Co., St. Paul, Minnesota, issued at its Omaha, Nebraska, agency.                                      W. C. Lyle, Agent.
"Dated June 10, 1921."

October 12, 1921, Iverson sold the property covered by the policy to Ruddy. Ruddy did not receive any assignment thereof. Ruddy had some talk with the local agent of the company, one Cox, and from him secured the name and address of the proper party to whom to write concerning the insurance. On December 5, 1921, he wrote the company at Omaha, Neb., as follows:

"Auburn, Nebraska, Dec. 5, 1921.
"St. Paul Fire & Marine Ins. Co., Omaha, Neb.—Gentlemen: Mr. Cox, of Howe, Nebraska, told me to write you in regard to Ins. Policy #17660 on a garage brick bldg in Howe, Nebr. I bought this building, and wish to notify you in regard to transfer, etc. Kindly give me date of expiration, amount, rate, etc.
"Yours truly,                                      M. E. Ruddy."

The company replied as follows:

Plaintiff's Exhibit 4.

"St. Paul Fire & Marine Insurance Company.
"Incorporated, 1862.

"William C. Lyle, General Agent,
"Peters Trust Building, Omaha, Nebraska.

"December 8, 1921.

"Mr. M. E. Ruddy, Auburn, Nebraska—Dear Sir: We have your favor of the 5th inst., notifying us that you have purchased the brick garage building insured under policy #17660 by Howe, Nebraska, agency.

"This policy covers $5,000 on brick garage building located on lots 17 to 24, block 4, Howe, Nebraska. The rate is $2.70; premium, $135.00. Policy was written for the term of one year, from March 25, 1921, to March 25, 1922.

"There is a loss payable clause attached, in favor of Cress I. Bernard. We trust this is the information you desire.

"We presume you will wish this insurance transferred to you, therefore kindly have assignment blank filled out on the policy and forward same to this office, and we will consent to the transfer.

"Awaiting your further advices, I am,

"Yours very truly,    W. C. Lyle, General Agent,
"By V. J. Lind."

January 29, 1922, a fire occurred which destroyed the property. Ruddy testified that he never saw the policy of insurance and never had it in his possession until after the fire; that in January, 1922, he took out insurance on this property for $3,000. The letter, Exhibit 4, seems to have been mislaid by Ruddy, and not found until several days after the fire. Ruddy brought action against the insurance company, plaintiff in error, asking judgment for the amount of his loss, and Cress I. Bernard, the mortgagee, intervened and asked judgment for the amount of his mortgage. At the close of the evidence each party asked a directed verdict in its favor, and the court, directed verdicts in favor of defendant in error, Ruddy, and Cress I. Bernard, mortgagee.

This suit is based on a contract of insurance. Appellant claims there is no liability to defendant in error, because (a) it had no contract with him; (b) that in any event there had been a change of title in the insured property to which it had not assented, and that under the terms of the policy this voided or at least suspended the policy; (c) that it is not liable to the mortgagee because of no liability to the principal.

Two provisions of importance in the determination of this case appear in the contract, as follows:

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached thereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Also:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void  *  *  *  if the interest of the insured be other than unconditional and sole ownership,  *  *  *  or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance,  *  *  *  whether by legal process or judgment or by voluntary act of the insured, or otherwise.  *  *  * "

[1] The question here is one of contract. Insurance contracts are construed, like other contracts, according to the ordinary sense and meaning of the terms employed, and if they are clear and unambiguous their terms are to be taken in the plain, ordinary, and popular sense. Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231; McGlother v. Provident Mut. Acc. Co. of Philadelphia, 89 Fed. 685, 32 C. C. A. 318.

[2] If a policy is ambiguous or doubtful, or language calculated to mislead is used, courts lean to a construction that will not permit the insurance company to take advantage of the ambiguity  National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563; Moulor v. American Life Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; Travelers' Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308. There is no such question here. There is nothing ambiguous about this insurance contract. It was a plain insurance of Smith & Bernard, and after the sale of the property to Iverson, and the indorsement on the policy by the company of the changed ownership, Iverson was, we think, accepted in place of Smith & Bernard as the insured under the policy.

[3] The provision of the contract as to the termination of the same if there was a change of title was a proper and valid provision. Farmers' & Merchants' Insurance Co. v. Iver Jensen, 56 Neb. 284, 76 N. W. 577, 44 L. R. A. 861; Ehrsam Machine Co. v. Phenix Insurance Co. of Brooklyn, 43 Neb. 554, 61 N. W. 722; Home Fire Insurance Co. of Omaha v. Michael S. Collins, 61 Neb. 198, 85 N. W. 54. Said provision applied to the situation existing between the company and Iverson, as he was accepted by the company in place of Smith & Bernard. He sold to Ruddy. Did the company accept Ruddy in place of Iverson? If it did not, there is, of course, no contract between the company and Ruddy. The alleged acceptance of Ruddy in place of Iverson as the insured is based upon the two letters which we have set out in the statement of facts.

[4] As to the general legal phases applicable to the situation, it may be observed that there is no contract unless the minds of the parties meet; that an insurance contract is no different than any other contract in that respect; that the contract is a personal one between the insurer and the insured; that, if there is no obligation as to one of the parties, there is none as to the other; that, if anything of importance remained to be done by either party, the contract would not be complete. Stephenson v. Germania Fire Ins. Co., 100 Neb. 456, 160 N. W. 962, L. R. A. 1917B, 307; Lett v. Guardian Fire Ins. Co., 125 N. Y. 82, 25 N. E. 1088; Davis v. Bremer County Fire Ins. Ass'n, 154 Iowa, 326, 134 N. W. 860; Insurance Co. v. Young's Administrator, 90 U. S. (23 Wall.) 85, 106, 23 L. Ed. 152; New England Loan & Trust Co. v.

299 F.—13

Kenneally, 38 Neb. 895, 57 N. W. 759; Atlas Reduction Co. et al. v. New Zealand Ins. Co. of New Zealand, 138 Fed. 497, 71 C. C. A. 21, 9 L. R. A. (N. S.) 433; Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644.

[5] Tested by these principles, let us examine the letters. The letter from Ruddy advised the company that he had bought the building and wished to notify them relative to the transfer, and asked them to give him the date of the expiration, amount, rate, etc., of the insurance policy. Evidently from the letter Ruddy knew very little about the insurance policy. The insurance company then replied,

"We presume you will want this insurance transferred to you, therefore kindly have assignment blank filled out on the policy and forward same to this office, *and we will consent to the transfer.*"

There seem to have been some attempts made thereafter by Ruddy to find out where the policy of insurance was, and he wrote letters with reference thereto, but here the transaction stopped. The fire occurred nearly two months subsequent to the letter from the company to Ruddy advising him how to secure a transfer of the policy. Can it be said that this was a completed transaction between the company and Ruddy, by which he took the place of Smith & Bernard or Iverson as the insured party? The company says in the letter it will consent to the transfer. What transfer? Not a transfer that has already been made, because they say, "We presume you will want this insurance transferred to you." There was no obligation on the part of Ruddy to take the insurance. He could have refused so to do. The insurance company had agreed that it would consent to the future transfer. It could have notified him at once that it consented, but it did not do so. It could have withdrawn its agreement to assent to a future transfer. The minds of the parties never met. The policy had not been transferred in accordance with any of its provisions. It had not been assigned to Ruddy by any one. He was not a party to the contract of insurance sued on. There was no privity of contract between him and defendant company, and at the time of the fire no agreement had been made between Ruddy and the company that he should be substituted as the assured under the terms of the policy. This seems to us determinative of the case, unless there is such waiver or estoppel as to prevent the insurance company questioning Ruddy's alleged right to recover on the policy.

Defendant in error claims that, not only was the transfer to Ruddy ratified by the company, but that the company waived its right to forfeiture. Does the situation here warrant the conclusion that the company by authorized acts had done anything to estop it from raising the question that it has no contract with Ruddy, or to establish the contention of defendant in error that the forfeiture clause as to change of title was waived, and that the company has elected to keep the policy in force. The policy provides that no authorized agent could waive the provisions thereof, unless the waiver was indorsed on the policy; but a provision even against waiver might be waived by those who had authority so to do. That question, however, is not material here.

[6] The general doctrine is that, under such provision as here appears as to change of title, such change without consent of insurer

voids the policy. Farmers' & Merchants' Ins. Co. v. Iver Jensen, 56 Neb. 284, 76 N. W. 577, 44 L. R. A. 861; Home Fire Ins. Co., of Omaha v. Michael S. Collins, 61 Neb. 198, 85 N. W. 54; Seal v. Farmers' & Merchants' Ins. Co., 59 Neb. 253, 80 N. W. 807; Esterly Harvesting Machine Co. v. Frolkey et al., 34 Neb. 110, 51 N. W. 594; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213; Brecht v. Law, Union & Crown Ins. Co., 160 Fed. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197; Vancouver Nat. Bank v. Law, Union & Crown Ins. Co. (C. C.) 153 Fed. 440.

[7] Was there waiver of this? It has been held in a number of cases and by text-book authorities that any act done by an insurer after knowledge of breach of condition which recognizes the continued existence of a policy constitutes a waiver of its right to avoid the policy therefor. Billings v. German Ins. Co., 34 Neb. 502, 52 N. W. 307; Currie v. Casualty Co., 147 Iowa, 281, 126 N. W. 164, 140 Am. St. Rep. 300; Soehner v. Grand Lodge, etc., 74 Neb. 399, 104 N. W. 871; Reed v. Union Cent. Life Ins. Co. of Cincinnati, 21 Utah, 295, 61 Pac. 21; Hunt v. State Ins. Co., 66 Neb. 121, 92 N. W. 921; Joyce on Insurance, 533; Insurance Co. v. Norton, 96 U. S. 234, 24 L. Ed. 689; New York Life Ins. Co. v. Baker, 83 Fed. 647, 27 C. C. A. 658; Missouri, K. & T. Trust Co. v. German Nat. Bank, 77 Fed. 117, 23 C. C. A. 65; Home Fire Ins. Co. of Omaha v. Kennedy, 47 Neb. 138, 66 N. W. 278, 53 Am. St. Rep. 521; Hanover Fire Ins. Co. v. Bohn et al., 48 Neb. 743, 67 N. W. 774, 58 Am. St. Rep. 719; Home Fire Ins. Co. v. Kuhlman, 58 Neb. 488, 78 N. W. 936, 76 Am. St. Rep. 111.

[8] The waiver here in its final analysis is reduced to this: When Ruddy wrote the company that he had bought the building and wished to notify them in regard to the transfer, was it incumbent then upon the company to immediately cancel the policy and return to him the unearned premium, or could they, without waiving the forfeiture, enter into an agreement with him that would result in substituting him for the insured? He was not in a position to demand the return of the insurance premium as far as the company knew. No assignment had been made of the policy to him. The party entitled to the return of the premium, if any one, would be the insured, and that was either Smith & Bernard or Iverson.

But it must be noted that, under the terms of the policy with reference to change of title and the provision that the policy shall be void if there is a change of title, is the further provision "unless otherwise provided." Hence the company had the right, provided it did not mislead him, or induce him to rely on a situation created by its lack of fairness, to treat the policy as suspended, and enter into negotiations, as it did, with Ruddy, looking to the acceptance of him as the insured, under the provisions of the policy. If it had a right to do these things under the very terms of the policy, then so to do could not have constituted a waiver. It relinquished no rights. Certainly where the policy provided that change of title would void the policy "unless otherwise provided" there could be no element of estoppel by virtue of the company doing the very things they were authorized to

do in the policy to bring about a substitution of Ruddy for Iverson—nothing inconsistent with intention to rely on the terms of the policy —merely pursuing the course provided therein. It was not to the injury of Ruddy. There was nothing to mislead him, or that he could complain of. It is entirely dissimilar to a situation where, after there has been a breach of warranty, a company receives a premium, knowing of such breach, as in State Central Savings Bank v. St. P. F. & M. Ins. Co., 184 Iowa, 290, 168 N. W. 201; where the court held that a change of title in violation of the terms of the policy would not work a forfeiture, where the assured had received and retained subsequently maturing premiums after knowledge of the forbidden conveyance. Here the company, it is true, had notice of the transfer; but they did nothing to induce Ruddy to believe that the insurance would apply any differently from the provisions of the contract. It merely notified him that they would consent to the transfer when the proper blanks were executed.

It is said in argument that the law does not favor technical defenses; that policies should be construed liberally; that forfeitures are not favored—all of which may be accepted as true, but in order to avoid forfeitures courts cannot do violence to contractual obligations. The unfortunate position of Mr. Ruddy has been brought about by his own carelessness in not acquainting himself with the terms of the policy at the time he bought the property. Had he waited the transfer of title until arrangements were made for a transfer of the policy, and the acceptance of the company secured and indorsement thereof made upon the policy, this situation would not have arisen. He failed to do these things, and now asks a court to construct a new contract by making him a party to it, when he was not. It is not within the province of courts to create contracts.

[9] Section 7787 of the Nebraska statutes (Comp. St. 922) is referred to, but not strongly urged by defendant in error. That section provides:

"* * * The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

We do not see how this section is in any way applicable to this situation. In Stephenson v. Germania Fire Ins. Co., 100 Neb. 456, 160 N. W. 962, L. R. A. 1917D, 307, it is held by the court that this statute could not apply in the absence of contract relationship between plaintiff and defendant, and such relationship we have held does not exist here.

[10] Is the mortgagee personally entitled to recover, not withstanding the situation as to Ruddy? The mortgage clause here is what is known as the standard mortgage clause and is as follows:

"Any loss under this policy that may be proved due the assured shall be payable to the assured and Cress I. Bernard."

We think it the almost universal voice of authority that under such a clause the mortgagee recovers only on the theory that he is the ap-

pointee of the insured to receive the money, or a portion thereof. If the insured cannot recover, he cannot recover. Smith & Bernard, original mortgagors, cannot recover, as they have parted with their insurable interest. Iverson cannot recover, if he has likewise parted with his insurable interest. Ruddy cannot recover, for the reasons we have hereinbefore set forth. Hence the mortgagee cannot recover. Sustaining this doctrine, see Delaware Ins. Co. of Philadelphia v. Greer et al., 120 Fed. 916, 57 C. C. A. 188, 61 L. R. A. 137; Brecht v. Law, Union & Crown Ins. Co., 160 Fed. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197; Atlas Reduction Co. v. New Zealand Ins. Co., 138 Fed. 497, 71 C. C. A. 21, 9 L. R. A. (N. S.) 433; Antes v. State Ins. Co., 61 Neb. 55, 84 N. W. 412; Lett v. Guardian Fire Ins. Co., 125 N. Y. 82, 25 N. E. 1088; Scania Ins. Co. v. Johnson, 22 Colo. 476, 45 Pac. 431; Dailey v. Westchester Ins. Co., 131 Mass. 173; Jaskulski v. Citizens' Mut. Fire Ins. Co., 131 Mich. 603, 92 N. W. 98; Keith et al. v. Royal Ins. Co. of Liverpool, 117 Wis. 531, 94 N. W. 295.

The court was in error in sustaining the motion to direct a verdict for defendant in error Michael E. Ruddy, and Cress I. Bernard, intervener and defendant in error. The case is therefore reversed and remanded to the trial court, with directions to grant a new trial.